(42 South. 139.)

No. 16,075.

NEW ORLEANS & N. W. R. CO. et al. v. TOWN OF VIDALIA.

(Oct. 15, 1906.)

1. CONSTITUTIONAL LAW — LEGISLATIVE AND JUDICIAL POWERS — MUNICIPAL ORDINANCES — REASONABLENESS — QUESTION FOR COURT.

    The power of a municipal corporation to determine as to the reasonableness of an ordinance, when exercised in connection with, and as included in, the enacting power, is, no doubt, legislative; but the power to determine, in a given case, presented by parties having property, or other rights, at stake, and independently of the exercise of the enacting power, whether a municipal corporation, professing to legislate under its incidental or general powers has done so in accordance with the conditions of the grant is judicial, and the effect of its exercise upon the power of legislation as conferred on the corporation is merely a necessary incident to the exercise by the courts of the power vested in them.

    [Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, §§ 129–132.]

2. COURTS—DISTRICT COURTS—JURISDICTION.

    Sections 3, 4, 5, and 6, pp. 225, 226, of Act No. 136 of 1898, are not obnoxious to the objections that they confer jurisdiction, or legislative power, on the courts, in disregard of the limitations and prohibitions of the Constitution.

3. MUNICIPAL CORPORATIONS—EXTENSION OF BOUNDARIES — REASONABLENESS OF ORDINANCE.

    Upon the facts disclosed, certain ordinances of the town of Vidalia, extending its boundaries, are held to be "reasonable."

    (Syllabus by the Court.)

Appeal from Tenth Judicial District Court, Parish of Concordia; Nathan Meredith Calhoun, Judge ad hoc.

Action by the New Orleans & Northwestern Railroad Company and the Union Oil Company against the town of Vidalia. Judgment for plaintiffs, and defendant appeals. Reversed and suit dismissed

Dagg & Dale and John Stirling Boatner, Jr., for appellant. Frederick Gray Hudson and Hugh Tullis, for appellee New Orleans & N. W. R. Co. Samuel Lucius Elam, for appellee Union Oil Co.

Statement of the Case.

MONROE, J. The town of Vidalia, having, by Ordinances 57, 59, and 60, of 1905, undertaken to change its boundaries so as to include certain property owned by plaintiffs, they (plaintiffs) brought this suit, alleging that the ordinances are unreasonable, and, if enforced, will result in serious damage to them, and that the law authorizing their adoption is unconstitutional. The law thus referred to is found in sections 3, 4, 5, 6, 7, pp. 225, 226, of Act No. 136 of 1898, and reads as follows:

"Sec. 3. * * * To enlarge or contract the boundaries of a city, town, or village, it shall be necessary for the municipal authorities to pass an ordinance defining with certainty the territory which it proposes to include in, or exclude from, the corporate limits, and also defining the entire boundary as changed. The ordinance shall not become operative until one month after its passage and until it shall have been published for three weeks in some newspaper, * * * and * * * by posting,

* * * when it shall become operative, unless an appeal be prosecuted. Any person interested may prosecute an appeal from the ordinance at any time before it becomes operative, by executing a bond payable to the city, town, or village, in the penalty of $200, with sufficient sureties, conditioned to pay all costs of suit in case the appeal be unavailing. The bond shall be approved by the judge of the district court and the appeal shall operate suspensively.

"Sec. 4. * * * That the appeal from the ordinance shall be by suit in the district court, against the mayor of the city, or town, or village; and the question shall be, whether the proposed extension or contraction of the corporate limits be or be not reasonable. If it be adjudged reasonable, the ordinance shall go into effect ten days thereafter, if no appeal be taken within that time, and the appellant and the sureties on his bond, within its penalty, shall be adjudged to pay the costs. But if it be adjudged to be unreasonable, the ordinance shall be vacated, and the extension or contraction of limits and all ordinances proposing practically the same shall be prohibited for one year.

"Sec. 5. * * * That any number of persons may join in one suit for the purpose of appealing from an ordinance extending or contracting the limits of a corporation. * * *

"Sec. 6. That if appeal be not prosecuted from the ordinance, the municipal authorities shall, at the expiration of the time therefor, inquire into the fact of publication and notice and adjudge whether the same has or has not been given, and such findings, if made in good faith, shall be conclusive, and if adjudged to have been made and given, the ordinance shall thereupon, after a month after its passage, become operative. In case of an affirmance of the ordinance by the court of appeals, it shall become operative and valid.

"Sec. 7. * * * That if the limits of any town, city, or village shall be unreasonably extended or contracted, any person interested may, after five years from the time when the limits were fixed, whether fixed under this act or heretofore, petition the municipal authorities thereof for a contraction or extension of the limits. In case the prayer of the petition be granted, in whole or in part, the ordinance for that purpose shall be subject to appeal by parties interested, as in other cases, and, in case of a refusal to grant the petition, in whole or in part, the petitioner may appeal to the circuit court, by the execution of a bond as provided in other cases, and an issue shall then be made up and the question shall be, whether the existing limits be or be not reasonable. If it be adjudged that the limits are reasonable, the appellant and his sureties shall pay the costs as in other cases; but if it be adjudged that they are unreasonable, the court shall define the extent of the unreasonable extension or contraction, direct the municipal authorities to pass an ordinance conforming the limits to the judgment of the court and shall enforce the direction. Such ordinance shall take effect from its adoption."

It is not disputed that the ordinances in question were adopted and published as prescribed by the statute, and this suit was instituted within the delay fixed by section 3, though plaintiffs do not, in terms, allege that it is the appeal contemplated by that section. The grounds upon which the statute is said to be unconstitutional are: (1) That it assumes to vest in the courts mentioned jurisdiction which is unauthorized quoad the amount, and (2) to attach to those courts legislative functions. The last mentioned of these objections having been sustained by the learned judge ad hoc, the defendant has appealed.

## Opinion.

The Constitution of the state contains the following provisions which are to be considered in the determination of the question decided in the district court:

"Art. 16. The powers of government of the state of Louisiana shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one; those which are executive to another; and those which are judicial to a third.

"Art. 17. No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise powers properly belonging to either of the other, except in the instances hereafter expressly directed or permitted."

"Art. 48. The General Assembly shall not pass any local or special laws * * * creating corporations, or amending, renewing, extending or explaining the charters thereof; provided, this shall not apply to municipal corporations having a population of not less than twenty-five hundred inhabitants, or to the organization of levee districts or parishes."

"Art. 96. Except as herein provided, no duties shall ever be attached by law to the Supreme Court, court of appeal, or district courts, or to the several justices or judges thereof, except such as are judicial."

There is no exception provided whereby the judiciary department is authorized to set aside a legislative enactment, whether before it becomes operative or afterwards, on the ground that it is unreasonable, impolitic, or unjust.

The corporation herein made defendant does not fall within the proviso of article 48, and hence, being among the corporations which are to be established, and whose boundaries, as we think, are to be extended and contracted under general laws, is subject, for the purposes of the question at issue, to the provisions of the statute quoted in the foregoing statement. This being the case, it is argued by plaintiffs' counsel that the extension and contraction of defendant's boundaries, like the establishment of such a corporation, is purely a legislative function; that it is none the less so because delegated to the corporation; that the determination of the question of its reasonableness, vel non, is of the essence of legislative action; and therefore that the duty of determining whether the ordinances extending defendant's boundaries are reasonable or unreasonable cannot be "attached" to the district court, court of appeal, or Supreme Court. These premises are, no doubt, sound, so far as they go, and, if they included all the factors which enter into the solution of the problem presented, the conclusion stated would seem to be inevitable. It remains to be ascertained, however, whether the learned counsel have taken sufficiently into account that we are called on to determine, not the reasonableness or unreasonableness of a law enacted directly by the legislative department of the state, but whether a governmental agency is keeping itself within the limits of the power delegated to it and is exercising that power in accordance with the terms of its mandate; and it may also be necessary to inquire whether they have taken sufficiently into account that, under our complex system, the discharge, by one department of the government, of the functions assigned to it by the Constitution, may, at times necessarily, though incidentally, involve the apparent exercise of authority vested in another department, and that the question must then arise whether the act-

ing department shall discharge the functions so assigned to it, notwithstanding the apparent invasion of the prohibited domain, or shall, in disregard of its own mandate from the fundamental law, abdicate those functions.

In dealing with direct legislation (as contradistinguished from such vicarious enactments as municipal ordinances), it is the province of the judiciary, when called upon in the manner provided by law, to inquire and declare whether the lawmakers have confined themselves within the limits prescribed by the Constitution of the state and of the United States, since, though primarily they decide that question for themselves in exercising their powers of legislation, it has been generally conceded, since Chief Justice Marshall handed down his luminous opinion in Marbury v. Madison, 1 Cranch (U. S.) 138, 2 L. Ed. 60, that the question is one which, in the last resort, is to be determined by the judiciary. It is also the province of the judiciary, in cases of the character mentioned, to inquire as to the legislative intent, and to decide whether those to whom the legislation applies are conforming to its requirements; and this question is properly discharged, whether the particular law in question is expressed in specific language, which can have but one meaning, or, in general terms, which are susceptible of construction. If it be expressed in specific and unambiguous language, and is not repugnant to either the state or federal Constitution, it must be enforced as written, even though, in the opinion of the court, it be unreasonable, impolitic, or unjust, since the lawmaking power of the state is subject to no limitations save those which are to be found in the instruments mentioned. If it be expressed in general terms, and any other construction be possible, the courts will not adopt that which would impute to the Legislature the intent to enact an unreasonable, impolitic, or unjust law, and, though, in arriving at their conclu-

sions, they are necessarily guided by their own standards of reason, policy, and justice, and will hold all persons and agencies to whom the law applies to those standards, their action in the premises is considered a competent exercise of judicial power. Upon the other hand, municipal corporations are creatures of delegated powers—"bodies politic, established by law as agencies of the state to assist in the civil government of the country," and "to regulate and administer the local affairs of the city, town, or district which is incorporated" (1 Dillon's Mun. Corp. [4th Ed.] § 19); and, as it is essentially a judicial function to determine whether an agent is acting within scope of his authority, so, one of the most important duties of the courts is to require such corporations, "in all cases, to show a plain and clear legislative grant for the authority which they assume to exercise" (Id. § 16). If such authority be granted in specific terms, the law by which the grant is made, like any other direct enactment of the lawmaking power of the state, and subject to the same conditions, must be enforced as written; but, even in such case, whilst the wisdom of the law and the motive of the lawmakers cannot, the motive of the exercise of the power granted may, be made the subject of judicial inquiry. Thus, quoting again from the learned author heretofore cited:

"It is well settled that the judicial branch of the government cannot institute an inquiry into the motives of the legislative department in the enactment of laws. Such an inquiry would not only be impracticable in most cases, but the assumption and exercise of such a power would result in subordinating the Legislature to the courts. In analogy to this rule, it is doubtless true that the courts will not, in general, inquire into the motives of a council in passing ordinances. But it would be disastrous, we think, to apply the analogy to its full extent. Municipal bodies, like the directors of private corporations, have too often shown themselves capable of using their power fraudulently, for their own advantage or to the injury of others. We suppose it to be a sound proposition that their acts, whether in the form of resolutions or ordinances, may be impeached at the

instance of persons injured thereby." Id. § 311.

If the authority which the municipal corporation assumes to exercise is granted in general terms, as, for instance, where it is authorized to enact such ordinances as it may deem necessary for the preservation of the health and in the interest of the general welfare of its inhabitants, it seems to be universally conceded that the grant is subject to judicial construction and will not be held to authorize the adoption and enforcement of ordinances which are unreasonable, unjust, oppressive, repugnant to common right or public policy, or inconsistent with the purposes for which the corporation is established. The decisions which support this proposition are very numerous, and many of them are collated in 1 Dillon's Mun. Corp. (4th Ed.) § 319 et seq., as, also, in 21 A. & Enc. of Law (2d Ed.) p. 976 et seq. In the publication first mentioned, we find, as part of the text:

"Sec. 319. * * * In this country, the courts have often affirmed the general, incidental power of municipal corporations to make ordinances, but have always declared that ordinances passed in virtue of the implied power must be reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the state."

"Sec. 327. * * * Whether an ordinance be reasonable and consistent with the law is a question for the court, and not the jury, and evidence to the latter on this subject is inadmissible. But, in determining this question, the court will have regard to all the circumstances of the particular city or corporation, the objects sought to be attained and the necessity which exists for the ordinance. Regulations proper for a large and prosperous city might be absurd or oppressive in a small and sparsely populated town, or in the country.

"Sec. 328. * * * Where the Legislature, in terms, confers on a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the Constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or order a grant of power general in its nature. In other words, what the Legislature distinctly says may be done cannot be set aside

by the courts because they may deem it unreasonable or against sound policy. But, where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid."

Cases are cited in which: An ordinance requiring druggists to furnish quarterly statements of the kind and quantity of intoxicating liquor sold by them, and to whom, was held unreasonable; an ordinance forbidding the placing or carrying of signboards on sidewalks was held reasonable; an ordinance exacting a license from peddlers, of not less than $1 nor more than $25, for a fixed time, at the discretion of the mayor, was held reasonable; an ordinance requiring cotton merchants to keep records of the names of sellers of loose cotton and the amount sold by them was held reasonable; an ordinance forbidding preaching, lecturing, etc., on the streets, was held unreasonable; an ordinance prohibiting street processions, with music and banners, was held unreasonable; an ordinance prohibiting a gas company from opening paved streets between December and March was held reasonable; but, an ordinance prohibiting the same company from, at any time, opening a street in order to lay connections from the main to the opposite side was held unreasonable. In this state, whilst all the Constitutions that we have had have distributed the powers of government as they are now distributed, and (save that of 1868) have contained articles identical in language with articles 16 and 17 of the present Constitution, the courts have always exercised the power to determine whether a municipal ordinance, enacted pursuant to general authority, was reasonable or unreasonable. Thus:

In Milne v. Davidson, 5 Mart. (N. S.) 409, 16 Am. Dec. 189, the question was presented whether, in the exercise of the authority to enact such by-laws as the mayor and council should deem necessary to maintain the cleanliness and salubrity of the city of New Orleans, it was competent for those authorities to adopt and enforce an ordinance prohibiting the establishment of private hospitals within the city limits, and, although this court maintained the ordinance, it did so upon the basis of an inquiry into its reasonableness, and concluded its opinion by saying:

"A stronger case than that now before us must be presented to induce this court to interfere and say that regulations having for their object public health were beyond their [the mayor's and council's] power, because they are contrary to our ideas of expediency."

In State v. Heidenhain, 42 La. Ann. 483, 7 South. 621, 21 Am. St. Rep. 388, in considering whether an ordinance prohibiting smoking in street cars was valid, the question of its reasonableness was entered into, and it was said:

"Much is therefore left to the discretion of the municipal corporation in determining what is a nuisance, and the discretion thus exercised will not be judicially interfered with, unless the corporation has been manifestly unreasonable and oppressive, invaded private rights, and transcended power granted to it."

In State v. Fourcade, 45 La. Ann. 718, 13 South. 191, 40 Am. St. Rep. 249, the defendant having been convicted under an ordinance prohibiting the adulteration of milk, it was held (quoting from the syllabus):

"The General Assembly, in conferring upon the common council of New Orleans the power it did, in its charter, contemplated that it would adopt a standard of adulteration as to drinks, and that adoption by it, not being shown to be unreasonable or arbitrary or as passing beyond a fair measure of correction for the evil which it seeks to guard against, is upheld."

In the similar case of State v. Stone, 46 La. Ann. 151, 15 South. 12, it was said:

"The exercise of trades and occupations is subject to reasonable conditions, essential to health; if the power be not express, under the implied power, the council would have the authority to adopt measures to maintain the standard of purity of that article of food to the extent of preventing the evil and injurious consequences to the public or individuals."

In State v. Dupaquier, 46 La. Ann. 577, 15 South. 502, 26 L. R. A. 162, 49 Am. St. Rep. 334, it was held that the milk ordinance, requiring venders to furnish samples for inspection, gratuitously, was not unreasonable, vexatious, or oppressive.

In State v. Payssan, 47 La. Ann. 1029, 17 South. 481, 49 Am. St. Rep. 390, the court found that an ordinance relating to the removal of garbage had been enacted pursuant to express authority, but said:

"If we were to concede that the authority was not, as we have just stated, express, we would, nevertheless, not be hasty to conclude that the ordinance, in a matter as important as health and cleanliness, is not within the inherent powers of the corporation. For it does seem to us, without reference to express power in the charter, that a municipal corporation does not legislate unreasonably by adopting ordinances to protect the community against the offensive and unwholesome smell of decaying vegetable and animal substances, and that such ordinances are consonant with the purposes of such corporations and consistent with its laws."

Upon the other hand, in State v. Morris, 47 La. Ann. 1660, 18 South. 710, it was held that an ordinance, making it unlawful for any other person than the city contractor to remove and dispose of dead animals, was an unreasonable exercise of the authority conferred upon the corporation to maintain the public health, etc.

There is no doubt that the adoption of an ordinance by a municipal corporation, acting in its governmental capacity—whether pursuant to the authority delegated by implication or in general terms—involves the exercise of legislative power, and, if the power so exercised were the whole sovereign power, vested by the people in the state government, the courts, for the reasons which have been given, would have no other function to discharge with respect to the ordinance than to inquire into its constitutionality and meaning; but, the legislative power of such corporations being delegated, sub modo, it is the right and duty of the courts to make the further inquiry whether, in its exercise, the condition upon which it was granted has been complied with—that condition being that ordinances enacted pursuant thereto shall be reasonable, impartial, fair, general in their application, and consistent with law, public policy, and common right. It is said that, to vest in a municipal corporation the power to enact an ordinance and in the judiciary the power to declare such ordinance invalid—as unreasonable, impolitic, etc.—is to divide the power of legislation between the two grantees, and that, whilst the grant may be competent as to the corporation, it is incompetent as to the judiciary because prohibited by the Constitution. This argument, we apprehend, is predicated upon a misapplication of the postulate that the determination of the question of its reasonableness or unreasonableness is of the essence of the exercise of legislative power, and would lead to the conclusion that the determination of that question, in its relation to any act purporting to be authorized by law, would involve the exercise of legislative power. We know, however, that whilst, as between individuals, an agent may be authorized, in general terms, to do all things reasonably necessary in the administration of the estate of his principal, and whilst the determination of the question of necessity, vel non, is of the essence of the exercise of the authority so conferred, the agent is not authorized to do that which is not reasonably necessary, and that the courts are constantly called on to decide whether the acts of agents are necessary or unnecessary, reasonable or unreasonable, and that, in so deciding, they exercise neither the power of the principal nor that of the agent, but the power which belongs to them—of determining, as between the principal and the agent, whether the latter has confined himself within the limits of his mandate. The power to determine as to its reasonableness, when exercised in connection with or as included in the power to enact an ordinance, is no doubt, legislative.

"To legislate," says the lexicographer, "is to make or enact a law, or laws." Web. Int. Dic. verbo "legislate." Legislative power is, therefore, the power to make laws, and, incidentally, to repeal them. But the power to determine, in a given case, presented by parties having property or other rights at stake, and independent of the exercise of any enacting power, whether a municipal corporation, professing to legislate under incidental or general authority, has exercised such authority in accordance with the condition of the grant, relates, not to the power of legislation, but to the manner of its exercise, and is, itself, judicial. This, we take to be the meaning of the authorities and the jurisprudence to which we have referred. There are other adjudged cases which may be thought to bear more directly upon the question here at issue. In some of them, the power which the courts were called on to exercise was held to be judicial, whilst, in others, it was held to be legislative; but we consider it unnecessary to lengthen this opinion by applying them to, or distinguishing them from, the case now before us. Callen v. City of Junction City (Kan.) 23 Pac. 652, 7 L. R. A. 736; Forsythe v. Hammond (Ind.) 40 N. E. 267, 41 N. E. 950, 30 L. R. A. 576; Territory ex rel. Kelly v. Stewart (Wash.) 23 Pac. 405, 8 L. R. A. 106; In re Application for Incorporation of North Milwaukee (Wis.) 67 N. W. 1033, 33 L. R. A. 638; Wahoo v. Dickinson, 23 Neb. 426, 36 N. W. 813; 20 A. & E. Enc. of Law (2d Ed.) p. 1151, note; Forsythe v. Hammond (C. C.) 58 Fed. 774.

Another matter which deserves some consideration is that the same Constitution which distributes the powers of government, whilst leaving to the lawmaking department the power to establish corporations, limits that power with respect to municipal corporations having less than 2,500 inhabitants to the enactment of general laws. Those laws must find their application in varied and multifarious conditions which are to arise in the future, and for which it would, in the nature of things, be impossible to make such specific provision as would guard the interests of the public or prevent the invasion of private rights. Unless, therefore, some control, with respect to the manner of their execution, can be exercised by the courts, it would seem doubtful whether they could, with safety, be enacted; and that the General Assembly entertained this view is to be inferred from the fact that especial provision for the exercise of such control is made in the statute now under consideration. If, then, it could properly be said that, in inquiring into the reasonableness of an ordinance such as these which are here attacked, the courts are exercising legislative power, the answer, we think, should be that the courts, being called upon to construe different provisions of the Constitution, should adopt that construction which will give effect to each and destroy none, and that, if, in the effort effectively to preserve the power of the legislative department to establish corporations of the character mentioned, they appear to exercise a power not vested in them, they do so as a necessary incident to the exercise of the power that is vested in them, and that the case falls within the rule applied by the Supreme Court of the United States to the exercise of the states of the power to establish quarantines and impose wharfage charges, etc., which, incidentally, operate as regulations of commerce, and which, if so intended, would impinge upon the exclusive authority vested by the Constitution of the United States in the Congress. Passenger Cases, 7 How. (U. S.) 400, 12 L. Ed. 702; Peete v. Morgan, 19 Wall. (U. S.) 582, 22 L. Ed. 201; Morgan's S. S. Co. v. Bd. of Health, 118 U. S. 455, 6 Sup. Ct. 1114, 30 L. Ed. 237.

The other objections which plaintiffs allege to the constitutionality of Act 136 of 1898 have not been alluded to in the argument, and are without merit. Thus, it is alleged that sections 3, 4, and 5 attempt to vest jurisdiction in the district court, and that section 6 attempts to vest appellate, and section 7 original, jurisdiction in the courts of appeal, all regardless of the amount in dispute and in violation of articles 84 to 118 of the Constitution. Article 109 of the Constitution confers upon the district courts, except in the parish of Orleans, original jurisdiction "in all cases where * * * civil or political rights" are involved, and in all other cases where no specific amount is in contest, except as otherwise provided in the Constitution; * * * and in all cases where the state, parish, any municipality, or other political corporation is a party deferdant, regardless of the amount in dispute" —which grant is amply sufficient to cover the jurisdiction herein .exercised by the district court. The concluding language of section 5 of the act ("In case of an affirmance of the ordinance by the court of appeals it shall become operative and valid") we understand to apply to the court in which the complainant institutes his suit, or, in the event of an appeal from the judgment of such court, to the tribunal to which such appeal may be taken. In the instant case, as plaintiffs allege that they will each be damaged by the enforcement of the ordinance complained of in an amount exceeding $2,000, and as a law of the state has been declared unconstitutional, the appeal was properly brought to this court. Const. art. 85. Section 7 of the act is inapplicable here, and need not be considered.

On the merits, we find plaintiffs' contention that the ordinances are unreasonable to be insufficiently supported by the evidence. The property which the defendant corporation proposes to include within its limits lies immediately adjacent to its present boundary and is the site upon which are established the depot, offices, shops, and warehouses of the plaintiff railroad company, and the mill and other buildings of the plaintiff oil company, so much of it as is not thus occupied being used, at times, for picnics, baseball games, and other amusements, which attract crowds over which, in the interest of its inhabitants, the authorities of the town ought to be able to exercise some police supervision, as they ought, for the same reason, to be able to exercise such supervision over the dynamite which the railroad company stores upon its premises, the more particularly as there are some hundreds of persons employed by the two plaintiffs who are, for the most part, residents of the town, and as the traffic of the town is carried on through the depot mentioned, which is badly lighted and policed. Upon the whole, we consider that the public at large and the community of the town will derive a distinct advantage from the proposed extension, and we do not discover in what way it will operate to the disadvantage to the plaintiffs, save in the possible increase, to a limited extent, of their taxation, and this, we think, will be measurably compensated by the benefits to accrue from the additional facilities, in the way of water, light, and police, which the town proposes to furnish.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled. avoided, and reversed, and that there now be judgment in favor of the defendant, rejecting the demands of the plaintiffs and dismissing this suit. It is further decreed that said plaintiffs and Roman Miller and J. M. Honig, sureties, be condemned, in solido, to pay all costs, including those of the appeal.

NICHOLLS, J. I concur in the judgment setting aside and annulling the judgment

of the district court; but, as that court declined to pass upon the merits on the ground that it had no jurisdiction, I think the case should be remanded to the district court and placed upon the docket and tried on the merits.