SOMMERVILLE, J.
The city of Lake Charles is traversed on two sides, and on parts of the other two sides, together with spurs and switches connecting -with business places on both sides of the tracks, by the defendant company, the St. Louis, Iron Mountain & Southern Railway Company.
Other railroad companies appear to have similar privileges in and around the city.
The original ordinance granted to the Kansas City, Watkins & Gulf Railway Company, the predecessor of defendant, the right to lay tracks and to operate cars thereon; and, among other things, it was stipulated and agreed:
“That the said railroad bed shall be so constructed as to be" on a level with the street,” and that the company should “use every precaution to provide against danger to life, limb, or .property by reason of the exercise of their rights and privileges under the said franchise hereby granted.”
The railroad company did not construct its tracks on a level with the streets, but, on a varying grade extending as much as two feet above the grades of streets in places.
In its long course through and around the city, defendant has crossed many intersecting streets with its main, spur, and switch tracks, over which it operates cars; and the city commissioners have designated eleven intersections, out of the many, and ordered defendant to place electric lights thereat, so as— 1
“to provide against danger to life, limb, or property by reason of the exercise of their rights and privileges under the said franchise.”
The city does not stand alone on its contractual rights with defendant in making this demand, or upon its general or implied powers as a municipal corporation; but also upon Act No. 35 of 1912, p. 43, which is entitled and reads as follows:
“An act authorizing certain municipal corporations to require railroad companies to maintain lights at street intersections.
“Section 1. Be it enacted by the General Assembly of the state of Louisiana that municipal corporations which have their streets lighted by gas or electricity shall have the authority to require railroad companies within the limits of the municipality to maintain lights at the intersections of their tracks with any and all streets, similar to and of equal power as those in use for the lighting of the streets.”
Ordinance No. 86, Commission Series, adopted by relator, follows the statute very closely, except that in section 1 defendant is—
“required to put in, install and maintain electric arc lights in the city of Lake Charles, at the intersections of its tracks with the following named streets of said city” (naming eleven intersections).
While section 2 provides:
“That all of said lights shall be similar to and of equal power to those now in use in this city for lighting its streets; all in conformity to Act No. 35 of the acts of the General Assembly of the state of Louisiana, 1912.”
The latter section is more nearly in conformity with the terms of the act of the Legislature.
Respondent resists compliance with the ordinance, alleging it to be an attempt to impose upon respondent an unequal share of the burdens of governmental expense in requiring it to install and maintain arc lights all night. Respondent denies that it operates any trains across said streets at night, or during the hours of darkness, except in cases of emergency, in which event it causes its trains to be brought to a complete stop at each street crossing, and flags such crossing. It says that it will so arrange its schedules as to give service during the hours of daylight; and if it should operate its passen *717 ger trains at night into its new passenger depot that there would be but one train, and that it would only cross three of the streets mentioned; and the trains would be stopped at each one of the crossings. Respondent also says that the arc lights now used by the city emit such great light as to obscure the headlights on its locomotives, and make it difficult for its -employés to operate its trains. (Respondent, evidently, must have been operating its trains while the city lights were burning, to have experienced this difficulty.;
Respondent says, further, that the act of the Legislature and ordinance of the commission are ultra vires, unreasonable, discriminatory, not uniform in their effect, and illegal, for the reasons that relator had installed lights at five of the designated intersections, thereby avoiding danger at those places; that respondent would be forced to aid in the expense of lighting the streets of the city; that the requirement that are lights used by the city and designated to be used by respondent interferes with its right of contract and freedom of action and judgment in the operation of its railroad. Respondent alleges that the electric company furnishing arc lights in the city will make excessive charges, and that it cannot be required to install and maintain lights.
Respondent charges, specially that the act of the Legislature is violative of the Fifth Amendment to the Constitution of the United States, in that it amounts to a taking of its property for public use without just compensation ; that it is violative of the Fourteenth Amendment in that it denies to it the equal protection of the law; and that it violates article 226 of the state Constitution, which provides that taxation shall be equal and uniform.
There was judgment for relator, the city, and respondent railroad company has appealed.
[1-3] The act complained of and given above in full, is clearly a police regulation, and not a taxing measure, directly or indirectly. . ■ And it gives to municipalities throughout the state, which have their streets lighted by gas or electricity, the authority to require all railroad companies within their limits to maintain lights at the intersections of their tracks with the streets, thus making the law to apply to all railroads alike in any given community. And respondent, in its return, says that “other railroads operating night trains in relator city,” are paying for lights along their respective tracks; so that it appears that respondent will enjoy equal protection of the law with other railroads when the ordinance complained of is enforced. The record contains no evidence of any inequality in the application of the law.
The courts have repeatedly held that police regulations requiring those using dangerous agencies on the public streets to protect the public from harm and danger by the use of necessary safeguards, was not the taking of property for public use without just compensation.
.The act of the Legislature is a police regulation, passed for the public welfare, and it is constitutional.
Respondent argues that the ordinance goes beyond the act in that the city not only requires it to “maintain” lights, as authorized in the act, but to “install and maintain electric arc lights.”
The ordinance goes .too far in section 1 in requiring respondent to maintain “arc” lights, for the act of the Legislature provides that it may “require railroad companies * * * to maintain lights * * * similar to and of equal power as those in use for the lighting of the streets.” The city cannot therefore require the maintenance of “arc” lights, which are in use in the city, if respondent can maintain lights “similar to and of equal power as those in use for the lighting of the streets,” at a less' cost; and *719 respondent claims that it might use “tungsten” lights, which are similar and equal to “arc” lights, at a less cost to it. The evidence in the record is not convincing on the point; but respondent must, under the terms of the statute, be given the right to maintain lights “similar to and of equal power” to the “arc” lights used by the city in lighting its streets. And it clearly appears from the ordinance that respondent has been really accorded this right, for in section 2, after naming the intersections in section 1, where lights should be placed, it is provided “that all of said lights shall 'be similar to and of equal power to those now in use in this city for lighting its streets,” and not of any given make or pattern.
The judgment appealed from will therefore be amended by striking the word “are” therefrom.
The argument that respondent can be required only to “maintain,” and cannot be required to “install and maintain” lights, is without merit.
To maintain is “to furnish means for the subsistence or existence of; provide for.” Century. And, where the Legislature used the word “maintain” in the act, it embraced the work of installing “lights” by railroads “at the intersections of their tracks with any and all streets.”
The other enumerated charges by respondent of discrimination, unreasonableness, non-uniformity, and illegality of the ordinance are met by the settled jurisprudence that the courts will not inquire into such charges, when the Legislature has specially delegated authority to municipalities to regulate certain designated police matters, unless the ordinances are shown to be oppressive, or that they invade private rights.
The court will not undertake to revise the action of the commission and say whether eleven lights -along respondents’ tracks are necessary for the public welfare and safety; or whether the lights should burn all night or not; or whether 6:55 o’clock in the afternoon, when respondents’ passenger train arrives, is before or after dark; or whether trains are sometimes behind their schedules; or whether the running of emergency trains at night would endanger the public or not at certain crossings; or whether respondent may increase its business and operate night trains (an increase in business may come to respondent, and the ordinance may have been passed with such result in view); or whether railroad tracks, a foot or two feet above grade, are dangerous in themselves, and without moving trains thereon (although we may be led to believe they are dangerous by the question asked a. witness by respondent’s counsel, as follows: “The real danger point to be guarded with a light at a railroad crossing is the track, is it not?”)
Laws, both state and municipal, are passed with reference to the future, and those which may appear to be unreasonable at the time of their adoption may very soon be most reasonable in their application. In the opinion of the commission, the eleven intersections designated should be lighted for the safety of the public; and the court will not undertake to decide to the contrary.
The commission had previously placed five lights at as many dangerous intersections along respondent’s tracks which witnesses say will be removed to other places, and the commission has said that five other lights must be placed there by respondent. The commission has the right to decide upon this matter, without supervision by the courts. And the courts cannot say that the action of the commission requires, or was designed to compel, respondent to bear any portion, or an undue portion, of the expense of lighting the streets of the city.
The power to adopt the ordinance under consideration was not an implied power; it was specifically bestowed in Act No. 35 of the Legislature of 1912, p. 43.
*721 [4] It is well settled in such case that an ordinance will not be annulled on the ground of unreasonableness or inexpediency. It must be clearly shown to be an invasion of private rights or to he oppressive to warrant the courts in interfering.
“Where the Legislature, in terms, confers on a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the Constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature.” Dillon, § 328; N. O. & N. W. R. Co. v. Vidalia, 117 La. 561, 568, 42 South. 139, 141.
The police power extends to the protection of the lives, health, and property of the citizens. By the general police power of a state, persons and property are subject to all kinds of burdens and restraints in order to secure the general safety, comfort, health, and prosperity of the people. For the purpose of exercising this power the largest legislative discretion is allowed, and this discretion cannot be parted with any more than the power itself.
Under the police power, conferred in the special act of the Legislature under consideration, municipalities which have their streets lighted by gas or electricity have the authority to require railroad companies within their limits to maintain lights at the intersections of their tracks with any and all streets, similar and ’of equal power to those in use for the lighting of the streets of each respective municipality.
The authority here given by the Legislature to municipalities is express; but, even if it were not, we would be slow to conclude that the ordinance, involving a matter as important as the public safety, is not an inherent power of a municipality, and that it is not covered by the franchise granted by the city to the respondent.
It is ordered, adjudged, and decreed that the judgment appealed from be amended by striking the word “arc” therefrom; and as thus amended it is affirmed. Costs of appeal to be paid by appellee.