28 So.2d 39

CART v. CITY OF JENNINGS.

No. 38348.

Oct. 8, 1946.

Percy C. Smith, of Jennings, for plaintiff-appellant.

Lestage & Arnette, of Jennings, Bass, Patin & Brame, of Lake Charles, for defendant-appellee.

PONDER, Justice.

The plaintiff, Cleveland H. Cart, a resident property owner of Jennings, Louisiana, is appealing from the judgment of the district court dismissing his suit, on the city's exception of no cause of action, attacking the validity of the proceedings whereby the City of Jennings entered into a contract for the paving and improvement of certain streets in that city and seeking to enjoin the execution of the said contract as well as the enforcement of the assessment levied against his property for the payment of such improvements.

The facts and issues of the case are fully and accurately stated and, in our opinion, correctly disposed of by the trial judge in a well-considered written opinion, from which we quote the following:

"There is no dispute as to the facts in this case. Jennings is a municipal corporation, operating under the commission form of government. Act No. 13 of the Third Extra Session of the Legislature of Louisiana for the year 1934, as amended, and Act No. 207 of the Legislature for the year 1912, as amended, constitute the Charter of the municipality. On April 9, 1946, the governing authority of the City adopted a resolution of intention to pave a number of streets within the corporate limits of the municipality and pursuant thereto a notice of intention to pave was duly published. In accordance with the resolution and the notice, a meeting of the City Council was held on May 6, 1946, at which protests of property owners were heard. Thereafter, a resolution was adopted ordering the construction of approximately eighty four per cent of the paving listed in the notice of intention to pave, and directing the mayor to advertise for bids. In due course, contracts were let for the construction of the street improvements and thereafter an assessment ordinance was passed on first reading, assessing, on a front foot basis, property abutting the contemplated street improvements.

"The evidence discloses that in the year 1938, the Police Jury of Jefferson Davis Parish organized a Road District, known as Road District No. 5, with territorial limits coincidental with those of the City of Jennings. In the year 1940, the Road District sold bonds in the sum of $220,000.00, for the purpose of improving streets and roads within the district. For reasons unnecessary to mention here, these funds were not expended. By proper resolution and joint action with the governing authority of the City, the Police Jury, as governing authority of Road District No. 5 of Jefferson Davis Parish, authorized the application of funds realized from the bond issue toward defraying the cost of the contemplated street improvements and joined with the City of Jennings in advertising for construction contracts and in the execution of these contracts.

"Plaintiff's petition sets up four grounds of alleged nullity of the proceedings taken by the Jennings Council. The first of these is that it was improper and illegal for the Council, after the protest meeting of property owners, to order the construction, and the advertising of bids therefor, of less paving than was included in the resolution of intention to pave and in the notice of intention to pave. Stated in another way, this contention is that it was mandatory that the City Council order all of the paving constructed that was listed in the notice of intention or none of it. For maintenance of his position on this point, plaintiff relies upon the case of Adams et al. v. Town of Leesville et al. [210 La. 106], 26 So.2d p. 370.

"In the first place, in that case, the governing authority of Leesville by resolution actually ordered the construction of all paving that was listed in the notice of intention to pave. The advertisement for bids included all of the streets that were set out in the notice of intention. Five streets of Leesville were listed in the notice of intention to pave and bids were received on these five streets. It was not until after the bids were actually received that the governing authority of Leesville, in secret session, made major alterations in the street paving proposal and awarded a contract for the paving of a portion of only three of the five streets. Our Supreme Court stated in the Leesville case that it could not be assumed that there would not have been more objections on the part of property owners to the proposed paving had they known that a major portion of the proposed paving would be eliminated by the Mayor and Board of Aldermen. However, this Court is clearly of the opinion that this language should be considered against the background of the factual stituation presented in the Leesville case. The Leesville case is to be distinguished from the case now under consideration. The controlling points of distinction are:

"(1) The notice of intention in the Leesville case simply lists five streets without any indication that any part of these five would be eliminated. The Jennings notice of intention, on the other hand, after setting out the proposed improvements and the manner of payment therefor, concludes as follows:

" 'Notice is hereby further given, that the City Council of the City of Jennings, Louisiana, will meet in special open session in the Council Chambers of the City Hall, Jennings, Louisiana, on Monday, the 6th day of May, 1946, at 9 o'clock a. m. and will on said date and at said hour and place designated, proceed to hear any and all objections to the proposed improvements and the manner of payment therefor, and after hearing and passing on such objections, if any there be, shall then proceed, if it determines to do so, to order said street paving, *or such portion thereof as may be de-*

*termined upon, to be done in the manner provided by Act No. 92 of 1934, as amended.'* (Emphasis ours.)

"(2) In the Leesville proceedings, the advertisement for bids listed all of the streets named in the notice of intention and there was no elimination of streets until after bids were submitted and received by the governing anthority. In the case of Jennings, the elimination of a portion of the paving took place prior to the advertising for bids, as an incident or consequence of the protest meeting.

"(3) In the Leesville case, a major portion of the proposed paving was eliminated whereas, in the case of Jennings, only approximately sixteen per cent of the proposed paving was eliminated, and this was of streets principally on the outskirts of the proposed paving in relatively undeveloped residential sections.

■ "The intention of the lawmaker in enacting Act No. 92 of 1934 and providing therein for the holding of a meeting at which objections of property owners will be heard by the municipal governing authority was to enable the governing authority to have a sound basis for the exercise of its discretion as to the improvements that should be ordered. It is to be assumed that municipal governing authorities will endeavor to abide by the wishes of property owners wherever it can be done without sacrificing the best interests of a number of other property owners or of the community as a whole. It is not obligatory up-

on these authorities to heed the protests of one or more property owners and it can easily be seen that this is as it should be. Were it otherwise, one owner of considerable property could cause much inconvenience and a poor and illogical paving plan. In Palmer v. Mayor and Board of Aldermen of Ponchatoula, 195 La. 997, 197 So. 697 [699], it was said:

" 'While the Legislature gives the taxpayers in Section 2 of Act 92 of 1934 the right of protest against the proposed paving, the lawmakers did not intend, by any means, to make the taxpayers the final arbiters in such case.'

■ "There is no valid ground for complaint, then, if municipal authorities, after giving proper notice of intention to pave and otherwise complying with the forms of law, exercise a sound discretion in the ordering of street improvements. Certainly it would be utterly illogical to hold that it is proper for municipal authorities to ignore protests of property owners, irrespective of the number, and order paved all streets listed in its notice of intention to pave and on the other hand, hold that it is illegal for those authorities to respect the majority objections of property owners abutting some of the streets proposed to be paved, where, in the exercise of a sound discretion, these authorities are of the opinion that such protests are well taken. It would appear that such a conclusion would defeat the very purposes of the Act in requiring a protest meeting and wrest from

municipal governing bodies their discretionary powers. There is nothing in Act 92 of 1934 which suggests that it is not the proper procedure for municipal authorities to decide after the protest meeting just what part of the proposed improvements should actually be ordered constructed, and, in fact, it appears to this Court that this is the precise intent of the law. Section 2 of Act No. 92 of 1934, Dart's § 5963.2, reads in part as follows:

" 'Any municipal corporation, taking advantage of this Act, shall through its governing authority, be required to adopt a resolution giving notice of its intention to construct, pave, surface, or otherwise improve, together with the necessary curbing, guttering, aprons, headers, drains, the street or streets, road or roads, sidewalk or sidewalks, alley or alleys, *or any part thereof,* proposed to be so improved, *and embody therein in a general way the improvements contemplated,* and the manner of payment therefor. Such notice shall be signed by the Mayor, or the executive officer of the municipality and shall contain substantially all things set forth in said resolution, and shall set forth further that the authority ordering the giving of notice will, in open session, at the date and at the hour and place named, proceed to hear any and all objection to the proposed improvements and the manner of payment therefor, and after hearing and passing on such objections, proceed, *if it determine, to order such improvements constructed in the manner*

*hereinafter provided for.* * * *' (Emphasis ours.)

"It will be observed that the governing authority is given power to improve streets or sidewalks or any part thereof and is required to give notice only in a general way of the improvements contemplated and the manner of payment therefor. The plain and inescapable implication of the words 'embody therein in a general way the improvements contemplated' is that the notice of intention is recognized as a preliminary step in the process to enable the governing authority to later decide (after the protest meeting) as to just which improvements should be constructed. This Court is of the opinion that our Supreme Court did not intend to say, and did not say, in the Leesville case, that municipal governing authorities are without discretion in determining what improvements should be ordered after the meeting of property owners at which objections are heard, or that a portion of the improvements mentioned in the notice of intention cannot be eliminated, so long as the governing authority does not act arbitrarily or in bad faith. A careful study of the opinion in the Leesville case leads to the conclusion that the real criticism of the Leesville proceedings (other than the secret session), was the elimination of paving *after* the submission of bids. This conclusion is dictated by the fact that the resolution ordering street improvements and the advertising of bids therefor *actually included all of the paving listed in the*

*notice of intention to pave,* as well as by the reference in the opinion to the following authority as supporting the Court's holding [210 La. 106, 26 So.2d 372]:

"'In Municipal Corporations, Dillon, 5th Ed., Vol. II, Sec. 807, page 1214, we find: "'"* * * If a contract differing therefrom in terms be awarded or made, it cannot be said to have been the result of the competition which the statute requires, and it is invalid. The rule that the contract must conform to the plan, specification, bid, and advertisement applies, although but one bid was made, and although there is no allegation or suggestion of fraud, and although the change made in the contract is to the advantage of the city."'

"A further consideration impelling the conclusion that the true criticism of the Leesville proceedings was the elimination of a major portion of the paving after bids were received is the holding of the Supreme Court in the Ponchatoula case, supra. The Court in that case very specifically held that municipal governing authorities are not bound by objections of property owners but are vested with discretion in making the decision as to the improvements which should be constructed. The principle that municipal authorities and not the Courts are vested with discretion in determining what improvements should be ordered, is so well settled as hardly to require the citation of authorities. However, a few of the cases so holding are:

"State ex rel. Pleasant et al. v. Hardy, Mayor, [La.App.], 157 So. 130, [134], where the Court said:

"'This government is divided into three separate and distinct departments, executive, judicial, and legislative. The judicial department cannot interfere with the legislative functions of a legislative body, whether it be municipal or state. The only function that the courts can exercise is to pass upon the constitutionality of a legislative act after its passage. Courts have no right or authority to intervene or interfere with the work of the lawmaker and during the process of legislation in any mode the work of the lawmaker is not subject to judicial arrest or control, nor open to judicial inquiry.'

"Gibson et al. v. City of Baton Rouge, 161 La. 637, 109 So. 339, [340, 47 A.L.R. 1151], in which the Court observed:

"'We think that selecting the site on which a public necessity, or public work of any sort, should be located, is essentially a legislative and not a judicial function. The very nature of the determination to be arrived at marks it as such; for it requires the exercise of much discretion, of a nature which a court would not be competent to exercise; involving an inquiry into, and consideration of, all the surrounding circumstances and the necessity perhaps of making the final selection wholly on its own initiative and regardless of the suggestions of those appearing before it. *It is*

*manifest also that such discretion can no more be controlled by the courts than exercised in the first instance.'* (Emphasis ours.)

"Henderson et al. v. City of Shreveport et al., 160 La. 360, 107 So. 139, where the syllabus reads in part:

" 'Where citizens' voted special tax for purpose of constructing such permanent public improvements as city council considered necessary, court held without authority to disturb council in exercise of authority, unless manifestly abused.'

"State ex rel. City of Lake Charles v. St. Louis, I. M. & S. Ry. Co., 138 La. 714, [721], 70 So. 621 [624], in which the Court said:

" ' "Where the Legislature, in terms, confers on a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the Constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature." Dillon, § 328.; New Orleans & N. W. R. Co. v. Vidalia, 117 La. 561, 568, 42 So. 139, 141.'

"A holding by this Court that the governing authority of the City of Jennings could not eliminate a portion of the paving listed in the notice of intention, would be tantamount to depriving it of discretion in the matter and substituting the Court's discretion.

"The resolution adopted by the City Council of Jennings, after the protest meeting was heard, specifically recites that:

" 'Be it resolved by the City Council of the City of Jennings, Louisiana, in lawful and open session convened, that it does hereby formally order the construction of the street paving referred to herein and listed and reiterated in detail hereinafter in this resolution, which does not include, and on the contrary omits, those streets named and listed in the April 9, 1946, resolution of intention to pave and in the published notice of intention to pave, as to which there were objections on the part of the property owners who own a majority, on a front footage basis, of the property abutting such streets; * * *.'

"Should the City Council of Jennings be penalized because it respected the wishes of property owners where there could be an elimination of a portion of the paving included in the original notice of intention to pave without deleterious effect upon the remainder of the paving program? It is the opinion of the Court not only that the Council should not be so penalized but also that it was never the intention of the lawmaker to require such a result.

■ "Plaintiff's second ground of attack is that the notice of intention to pave and fixing the date for the protest meeting does not set out that the assessments which will be later levied against lots abutting the

streets to be improved will vary according to the widths of the paving. The notice of intention is too lengthy to reproduce here in full. It lists the streets intended to be paved, the type of paving proposed for each street and the width of the paving for each street; that the cost 'shall be chargeable to each lot or parcel of real estate abutting the streets to be paved with reinforced or plain concrete, or with asphalt as the case may be, in the proportion that its frontage bears to all of the abutting lots or parcels of real estate, and accordingly as it may be improved with reinforced or plain concrete, or with asphalt, on the respective streets;' that assessments shall be levied against abutting lots payable over a period of ten years; that paving certificates in an amount not exceeding the total amount of the installments or deferred payments of the assessments will be issued and sold by the City to mature serially over a period not exceeding ten years; that the City Council would hear protests on May 6, 1946, and then proceed to order the street paving or such portion thereof as might be determined upon.

"It is impossible for municipal authorities to know the details of the assessments that will be levied against lots abutting streets to be improved until after construction contracts are let and the municipal engineer has made his computations. As already mentioned, Section 2 of Act No. 92 of 1934, only requires that the resolution and notice of intention to pave must state 'in a general way the improvements contemplated, and the manner of payment therefor.' The Jennings resolution and notice of intention to pave meets this requirement of the law and it is not necessary that there be any attempt to set out just what the assessments or the cost of the paving will be. It is only natural and logical that property owners who receive wide streets of the best type of concrete paving will be expected to pay more than those who receive narrow streets of an inferior type of paving. The resolution and notice of intention carefully lists the proposed street paving according to types and widths and none of the Jennings property owners could have been misled.

"Counsel for plaintiff has cited several cases holding that municipal authorities must comply strictly with statutes authorizing them to construct public improvements. This principle of law is universally recognized, but plaintiff has failed to point out wherein the resolution and notice of intention violate the requirements of the statute.

"Plaintiff's next contention is that the assessment ordinance is invalid because it permits property owners to pay their assessments in full in cash for a period of ten days following the final adoption of the ordinance instead from its passage on first reading. This contention is based upon the following provision of Section 6 of Act No. 92 of 1934, Dart's, § 5963.6:

"'The amounts assessed in said ordinance shall be due and collectible immediately on its passage, and, if not paid within ten days from the date of the adoption of said ordinance, it will be conclusively presumed that any property owner whose property is affected thereby, exercises the right and option, which is hereby authorized, to pay the amount due in equal annual installments * * *.'

"Counsel for the City point out that the statute permits payment of assessments within ten days from the date of the *adoption* of the ordinance and that it is, therefore, necessary to determine what constitutes such adoption. The Charter of the City of Jennings, Section 13 of Act No. 13 of the Third Extra Session of the Legislature for the year 1934, Dart's, § 5451.13, reads in part as follows:

"'Every ordinance or resolution appropriating money or ordering any street improvement, or sewer, or making or authorizing the making of any contract, or granting any franchise or right to occupy or use the streets, highways, bridges, or public places in the city for any purpose shall be complete in the form in which it is finally passed, and shall remain on file with the city secretary for public inspection at least one week before the final passage or adoption thereof, and notice thereof must be published once in the official journal or other newspaper published in said city at least one week before the final passage or adoption thereof. * * *'

"And Section 17 of that same statute reads in part as follows:

"'No ordinance passed by the council shall become effective until published once in the official journal or other paper in such city. and no ordinance passed by the council, except when otherwise required by the general laws of the State or by the provisions of this Act, except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency; and is passed by a two-thirds vote of the council, shall go into effect before ten days from the time of its final passage; * * *.'

"It appears then that an ordinance of a municipal council operating under the commission form of government is not adopted (with certain exceptions not controlling here) until it has been passed on first reading, published at least once and has remained on file in the City Clerk's office for not less than one week after the publication and then passed on second reading.

"It may be that an assessment ordinance which fixes the ten day period as running from the date of the first passage of the ordinance would be valid but it is unnecessary for the Court to decide that point. A practical consideration militating against the propriety of starting the ten day period from date of passage on first reading is that it might happen, without fault on the part of a municipality, that an assessment ordinance would not be published until after the expiration of that ten day period.

Since a longer time is given to plaintiff and other property owners to pay in cash and save interest under the provisions of the ordinance as drafted than would be the case if only ten days were allowed from the date of first passage, it is incongruous that plaintiff should complain on this point.

"At any rate, it is the Court's view that, construing Act No. 92 of 1934 along with the Charter provisions of the City of Jennings, the word 'adoption' should be interpreted to mean adoption on second reading (since passage on first reading is only the first step toward the adoption of the ordinance) and the ordinance is, therefore valid.

■ "Plaintiff's fourth and final contention is that 'the construction contracts are invalid for the reason that they are entered into jointly by the City of Jennings and the Police Jury of Jefferson Davis Parish, Louisiana, acting as governing authority of Road District No. 5 of said parish.' Plaintiff emphasizes that statutes permitting municipalities to construct public improvements and levy assessments to meet the cost thereof, must be strictly followed by municipal governing authorities and that what is not permitted by the terms of such statutes is prohibited. While this proposition may be accepted as largely true, it is a generality affording but slight helpful application to factual problems. The City of Jennings has all of the rights, privileges and benefits, along with correlative duties and obligations, under the construction contracts executed jointly with the Police Jury as would have been the case had the Police Jury not been a party.

"However, it is unnecessary that resort be had solely to Act No. 92 of 1934 in order to test the merits of plaintiff's contention. Full sanction for the action of the City of Jennings in joining with the Police Jury of Jefferson Davis Parish, as governing authority of Road District No. 5 of that parish, in the execution of the construction contracts, is afforded by Act No. 246 of the Legislature of Louisiana for the year 1942. Section 4 of that Act, Dart's Statutes, Vol. 4, § 6283.4, provides:

" 'Any two or more parishes, any two or more municipalities, or any one or more parishes and one or more municipalities are hereby authorized to engage jointly in the exercise of any power, the making of any improvement, or the promotion and maintenance of any undertaking which each of the participating authorities is empowered to exercise or undertake individually under any provision of general or special law. Such arrangements may include, but are not limited to, activities concerning:

\*    \*    \*    \*    \*    \*

" '(d) the construction, or maintenance and use of public improvements, such as roads, streets, sidewalks, buildings, bridges, sewers, and wharves; \* \* \*.'

"And Section 1 of the Act, Dart's, § 6283.1, reads:

" 'For the purposes of this act "municipalities" shall include cities, towns, villages, and special districts created to perform one or more public functions or services. "Governing Body" shall mean, in the case of a parish, the police jury or other body with authority to enact ordinances and resolutions and in which is vested responsibility for the public policy of the municipality.'

"For the reasons stated, the exception to plaintiff's petition of no cause of action filed on behalf of the defendant City of Jennings is upheld, the prayer for injunctive relief denied, and the plaintiff's suit dismissed at his costs."

For these reasons the judgment appealed from is affirmed.

O'NIELL, C. J., concurs in the result.