FOURNET, Justice.
 

 The plaintiffs, citizens and taxpayers of the town of Ponchatoula, Louisiana, are appealing from a judgment dismissing their suit against the town to have declared null and void, and to enjoin the enforcement of, an ordinance contracting the corporate limits by excluding therefrom a certain designated area on a part of which is located industrial plants owned and operated by Marion T. Fannaly, Inc.
 

 According to the record the Fannaly corporation started a cold packing business in the town a few years ago on a comparatively small scale. This has since grown into one of the largest businesses of its kind in the country, with the result that the corporation now has a modern plant covering some three squares in the area excluded from the town limits by the ordinance, the value of these facilities being estimated to be equal to or in excess of the assessed valuation of all of the remaining property within the corporate limits,— $1,000,000. From its very inception the plant has been exempt from all taxes— state, parochial, and municipal' — having obtained a certificate of exemption from the State Board of Commerce and Industry. This exemption will soon expire.
 

 In 1945 the corporation proposed to the town of Ponchatoula that if it would exclude from its territorial limits that part of the town north of Willow street and east of the Illinois Central Railroad, it would double its plant facilities and pay to the town $7,500 as soon as the ordinance providing for such contraction would become operative and a like sum on January 10, 1946, in order that the town might buy a much needed new fire engine, road equipment, and improvements for its water system. It also agreed to pay $600 a year, 'at the rate of $50 a month, to the fire department, and $300 a year, or $25 a month, for police protection. In this proposition it is suggested that if the plans are put into effect “the Hayes Dairy Products plans to dispose of their present plant and to erect a complete dairy manufacturing plant on Square 19 for cooling and pasteurizing milk, manufacturing of ice cream, cheese, butter, evaporated, or condensed milk, etc. This plant would be in the corporate limits of Ponchatoula.”
 

 In the furtherance of this plan or proposition, Marion T. Fannaly, president of the corporation, appeared before various civic bodies and organizations in the community explaining the proposal to them and he obtained from them resolutions recommending that the ordinance be adopted contracting the corporate limits as requested. The particulars in connection with the plan (and as outlined above) were detailed in a full page advertisement in a local
 
 *121
 
 newspaper, the readers being advised that the plan would be submitted to the town council at its regular meeting on Tuesday, November
 
 6,
 
 1945, and that it would again be taken up by the council for final consideration at a special meeting scheduled to be held one week later, on November 13. On that day the ordinance was adopted by the council, the Mayor and one of the councilmen not voting. By this ordinance the town limits were refixed so as to exclude an area of approximately 70 acres located only three blocks from the main street of the town. One of the industries benefited by such exclusion is directly across Willow street from a competitor in the same business (veneering). The corporation’s cold storage and packing business, also affected by the ordinance, is only two blocks from a competing business, although the latter business is operated on a much smaller scale.
 

 Following the adoption of the, ordinance, A. M. Edwards, Jr., Leon Edwards, the A. M. Edwards Company, Inc., Albert L. Wright, Everett Cowen, Carl Wilson, and Edward Vineyard, joined by the Ponchatoula Farm Bureau and the Ponchatoula Farmers Union, instituted this proceeding. The last five parties, because of certain allegations contained in the petition, subsequently discontinued their suit.
 

 It is the contention of the plaintiffs that Act 154 of 1944 (amending and re-enacting Section 1 of Act 35 of 1924, as amended and re-enacted by Act 149 of 1928), authorizing the council’s action in contractingthe town limits, is unconstitutional in that (1) because of extraneous matter contained in the body the act expresses more than one object, the title of which is not indicative thereof, and (2) it seeks tO‘ place a limit upon the period during which the ordinance adopted by municipal authorities in extending or contracting the territorial limits of the various municipalities may be contested. They contend, further, that to uphold the action of the town council as being authorized under this legislative act is in violation of Section 22 of Article X of the Constitution of 1921. It is their further argument that the ordinance is grossly unreasonable and tends to establish the dangerous precedent of permitting a corporation to barter for tax immunity for a stipulated sum, thereby discriminating against competing industries, seriously jeapordizing the fisc of the community, and making the burden of maintaining the municipality more onerous on the remaining taxpayers, with the ultimate reduction of the security of the bondholders as well as the revenues needed for the maintenance of the peace and safety of the community.
 

 Act 154 of 1944, as indicated by its title, is an act to amend and re-enact Section 1 of Act 35 of 1924, as amended and re-enacted by Act 149 of 1928, and a perusal of the body of the act does show that there is contained therein extraneous matter entirely foreign to the object thereof.
 
 *123
 
 The act as reported in the bound volume of the acts of the legislature for 1944 released by the Secretary of State also appears to be incomplete. However, the portion' of the act applicable to the issues here presented for our consideration are, for all intents and purposes, identical with the 1928 act, with the exception that there is contained in the 1944 act a provision to the effect that the only-question to be decided on appeals taken from the - adoption of such ordinances is “whether the proposed extension or contraction of the corporate limits be or be not reasonable,” a matter that has been established by the jurisprudence of this court previous to the adoption of the 1944 act. Lawrence v. Mansfield, 129 La. 672, 56 So. 633; Bowman-Hicks Lumber Co. v. Oakdale, 144 La. 849, 81 So. 367. It therefore follows that whether or n'ot (because of the extraneous matter contained in the act) it be held invalid (and conceding that the act is not valid for the purpose of disposing of this case), the provisions of Act 35 of 1924, as amended by Act 149 of 1928, which were followed, are controlling.
 

 Likewise, the further contention' of counsel for the plaintiffs that because the act of 1928 and the act of 1944 contain the provision that limits the time within which an attack may be made upon the ordinance adopted by the municipality in extending or contracting the corporate limits renders both of these acts unconstitutional, is without foundation. The authorities cited in support of this contention are not applicable to the case at bar. It is clearly within the province of the legislature in all cases where there is no constitutional inhibition, to place a limit upon the time within which such matters may be contested in the courts.
 

 It is elementary that municipal corporations are creatures of the state, established by the legislature for the purpose of administering local affairs of government. Siich powers as these corporation's have, as well as the limits of the territory they are to govern, are all matters that are entirely within the province of the legislature and so long as there is no constitutional provision restricting the legislature’s authority in this respect, that body may enlarge or diminish the territory of these corporations, consolidate on'e with another in whole or in part, and even terminate their existence at will. It may also legally delegate these powers to the municipal authorities. 38 Am.Jur. 635, dealing with Municipal Corporations, Section 18, etc.
 

 This brings up for our consideration’, therefore, the question of the reasonableness of the ordinance.
 

 The trial judge in his written reasons for judgment, after declaring that he felt the courts should not interfere with the discretion vested in the municipal authorities in the adoption of ordinances of this nature so long as the town is benefited, the
 
 *125
 
 prejudice to or benefit by individual property included or excluded by such action being immaterial, based his conclusion' that the ordinance was reasonable largely upon the testimony of the members of the town council and the recommendations made to them by two local civic organizations, the American Legion and the Business Men's Association.
 

 The three members of the council voting for the ordinance testified most positively they were not in any manner influenced in casting their vote by the cash offer of the corporation' but, instead, that they were motivated entirely and solely by what they thought to be to the town’s best interest, as it appeared to them after they received the advice and counsel of numerous professional and business men in the community, expressed in the resolutions adopted by the civic organization's. The Mayor and the councilman not voting also testified it was their opinion the action of the council was for the best interest of the town.
 

 The resolution adopted by the American Legion simply declares that since the Fannaly corporation has made a proposition to the town, the purpose of which is to exclude the manufacturing plant of the corporation from the corporate limits, and since such proposition would be to the advantage of the town because the expansion' of the plant would increase the payroll and benefit the merchants and citizens generally, the Legion' approved the proposition.
 

 The resolution of the Business Men’s Association, however, more nearly expresses the real object of and the motivating factor behind the proposition and its ultimate effect for, in the detailed explanation of the reasons for its adoption, is contained the statement that Mr. Fannaly, president of the corporation, appeared personally before the membership and .explained to them the proposition substantially as it was outlined in the newspaper advertisement and declared that in order to meet the competition of similar plants located closer to the sources, of the supplies needed for their functioning he was forced to ask the town council to contract the town limits so as to exclude the corporation’s property,
 
 "thereby saving the Town tax,”
 
 and that, in return for this release, he was prepared to pay into the town' treasury the considerations offered. In addition to this, the resolution contains the statement that he proposed “to build a Modern Creamery of increased capacity as well as other buildings inside the corporation [limits] which will compensate for the loss of some of the potential tax he would be liable for.” (Italics an'd brackets ours.)
 

 An examination of all of the evidence in the record, together with the above mentioned resolutions, unmistakably shows that the corporation’s sole motive in making this proposal was to secure relief from municipal tax levies on its industry and on its proposed additions thereto without following the procedure set out in Section
 
 22
 
 
 *127
 
 of Article X of the Constitution, wherein it is declared that before such exemption can be granted “the question of granting such exemption' to each such new industry or to each such addition or additions to any industry already established, and the length of time such exemption shall continue, be previously submitted to the resident property taxpayers qualified td vote in the municipality or in the parish, wherein such exemption is sought to be granted, at any election called for that purpose and, a majority of those voting, in number and amount, do vote in favor thereof * *
 

 The procedure followed in the instant case, in our opinion, is nothing more than an attempt to circumvent this constitutional provision, thus permitting the municipality to do indirectly what it is prohibited from doing directly without securing the approval of the resident property taxpayers in an' election. Furthermore, regardless how sincere may have been the motives of the members of the town council in' this case, we feel that for us to place our stamp of approval on the action taken by them would not only be against the public policy of this state but would also tend to open wide the doors now closed on the right of municipalities to traffic and sell their taxing power for cash and other considerations, with the result that a municipal authority might be enabled to resort to such practice in any of the innumerable contrivances and schemes that the skillful, resourceful, and adroit min'd of man can conceive.
 

 Moreover, we think that to allow this ordinance to become operative, in the light of the provisions of the act authorizing its adoption relating to the procedure that must be followed in the event it is deemed advisable at a later date to extend the corporate limits • to include this area, could result in most unfortunate and irremediable consequences. To illustrate — suppose the proponents of this ordinance fail to carry out the promises made to secure its adoption, i. e., to expand their plant, build a large and modern- dairy within the city limits, or pay the cash considerations promised. The town would be powerless to again include within the corporate limits the territory thus deleted, for this can only be done when there has been continuously on file in the office of the clerk of the municipality for at least 10 days prior to the adoption of an ordinance extending the boundaries of the city the written' assent of at least 25'% in number and value of those who at the time of the filing of said petition own property within the area that would thus become subject to taxation (Section 1 of Act 35 of 1924, as amended), which would mean that in a case such as this, the petition could never be secured, it appearing from the evidence in the record that the corporation in this case owns all of the valuable property located in the area, thus leaving the matter of its incorporation into the city limits at a future
 
 *129
 
 date solely to the will and desire of the corporation.
 

 For the reasons assigned, the judgment appealed from is annulled and set aside and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiffs, A. M. Edwards, Jr., Leon Edwards, and the A. M. Edwards Company, Inc., and against the Town of Ponchatoula, decreeing the ordinance adopted by its legally constituted officials on November 13, 1945, refixing the boundaries of the corporate limits of the town to exclude therefrom the area north of Willow street and east of the Illinois Central Railroad, to be null and void and of no effect.
 

 PONDER, J., recused.