336 So.2d 122 (1976)
Cecil Emily JOHNSON, Appellant,
v.
The TOWN OF SUWANNEE RIVER, Florida, Appellee.
No. Z-6.
District Court of Appeal of Florida, First District.
July 13, 1976.
Rehearing Denied September 1, 1976.
Albert C. Simmons of Simmons & Langley, Chiefland, for appellant.
William O. Clifton, Trenton, for appellee.
*123 RAWLS, Acting Chief Judge.
Pursuant to the provisions of Florida Statute 171.02 (1973),[1] appellant, Cecil Emily Johnson, owner of a substantial acreage of land located within the corporate limits of appellee, Town of Suwannee River, Florida, appeals from a final judgment in which the trial court refused to exclude some 400 acres from the corporate limits of said town.
The trial court made the following findings of fact in its final judgment, viz:
"The Town of Suwannee River, Florida, comprises approximately 1,500-1,600 acres in Levy and Gilchrist Counties lying South and East of the Suwannee River. The Town is traversed by U.S. Highway #19-98, and State Road #26 ends adjoining U.S. Highway #19-98 within the corporate limits. Likewise, a railroad traverses the Town. The main development of the Town is along U.S. Highway #19-98. Other than the Petitioner's [appellant's] land, the majority of the Town is subdivided into lots or tracts, but has not otherwise been developed.
"The Town of Suwannee River levies a three (3) mill ad valorem taxation. The Town has built a Civic Center-Town Hall, provides certain street lighting, subsidizes a private garbage disposal operation, subsidizes a volunteer fire department, has paved approximately one (1) mile of streets, and maintains through a contract with the County certain other pre-existing roads and streets. The City provides no water or sewage services and maintains no police force. The Town Government has adopted a building, electrical and plumbing code, and is in the process of adopting a zoning ordinance. "The Petitioner's land sought to be ousted, comprises approximately 400 acres, lying in the Northeast corner of the corporate limits within a mile of U.S. Highway #19-98. It is bounded on the East by State Road #26 and on the West by the Seaboard Coastline Railroad. The lands adjoining the property sought to be ousted on the East and North are rural farm lands sparcely inhabited. The land sought to be ousted is bounded on the South by other lands owned by the Petitioner which are not sought to be ousted. The City has paved a street West of the Railroad, but there is no crossing from said street to Petitioner's lands. The corporate limits actually jog North one-half section to take Petitioner's land into the corporate limits. Petitioner's land is completely uninhabited, there being thereon a planted pine tree plantation, several hundred acres of cleared area for corn and soybean farming, the remainder being wild and unimproved. Portions of the land are used for cattle pasturage. All of the land is high and dry and suitable for subdivision, although Petitioner has declared her intentions that the lands shall remain in their present condition and used for their present purposes. The Petitioner lives outside the corporate limits on land adjoining the property sought to be ousted.
"There is no other farm or farming operation or planted tree plantation within the corporate limits other than Petitioner's. There is at least one (1) other large tract within the corporate limits, that being approximately 160 acres upon which is located Fannin Springs.
"Petitioner's land receives none of the municipal benefits listed hereinabove other than the protection afforded by the volunteer fire department. However, all of the said benefits would be available were the land inhabited and/or subdivided, and if so, would be commensurate with the benefits received by other lands within the municipal limits. The land of the Petitioner is suitable for development *124 as a subdivision, and as such will potentially be afforded municipal benefits."
Appellant has no quarrel with the foregoing findings of fact, her sole contention is that the trial court erred in applying the law to those facts. We agree and reverse.
The elements essential to constitute a municipal corporation comprehend a contiguous territory sufficiently populated and industrialized to make it necessary that additional and better governmental services such as police protection, sanitary improvements, lights, water, electricity, sewage disposal, paved streets, and other municipal conveniences be provided. The area incorporated must be suited for municipal purposes and must bear a just proportion to the population included.[2] The foregoing elements as a whole were found absent by the trial court when it found: 1) the town provides no water or sewage services or police protection; 2) no streets paved or otherwise to the subject property; 3) the corporate limits jog north one-half section in order to include the property; 4) the land is uninhabited and is now being utilized for agricultural purposes (primarily for growing pine trees, corn and soybeans with the remainder being wild and unimproved); and 5) that appellant's land receives no municipal benefits other than the protection afforded by the volunteer fire department.
Although not cited in entering its final judgment, apparently, the trial court relied upon the opinion of the Fourth District Court of Appeal in Town of Malabar v. State.[3] The Malabar decision and line of cases relied upon therein specifically found that the land sought to be ousted "received benefits worthy of cognizance in the past, and there were substantial prospects of benefits in the future", and that the land in question was of the same nature as most of the other land located in the town. As disclosed in the trial court's findings of fact, the subject land is not of the same nature as most of the other land located in the town, and, save for the possible services of the volunteer fire department, it received no municipal benefits. The finding by the trial court "that all of the said [municipal] benefits would be available were the land inhabited and/or subdivided, and if so, would be commensurate with the benefits received by other lands within the municipal limits" (emphasis supplied) does not constitute a metamorphic transformation of agricultural land into municipal property.
The Supreme Court's decision in Smith v. Town of Montverde[4] is squarely in point. There, the owners of 450 acres sought to exclude same from 1,360 acres of land which had been incorporated within the Town of Montverde. The Supreme Court, in reversing a judgment in favor of the town, stated:
"When considering the actual use to which petitioners' land is being applied and the potential, natural and appropriate use of the land by reason of the factual surrounding circumstances, it is apparent that the rendering or tendering of municipal services in respect thereto would not be of commensurate value to the petitioners as would like services rendered or tendered to the lands (and the owners thereof) appropriately placed within the municipality. Furthermore, neither the pleadings nor the evidence shows that any inequity will result from the exclusion."
The judgment appealed is REVERSED.
BARKDULL, THOMAS H., Jr., Associate Judge, and MELVIN, WOODROW M., Associate Judge, concur.
NOTES
[1] The Town of Suwannee River contains less than 150 qualified electors, thus bringing this action within the purview of Florida Statute 171.02 (1973).
[2] State v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327 (1937); State v. Town of Lake Placid, 109 Fla. 419, 147 So. 468 (1933); and State v. City of Largo, 110 Fla. 21, 149 So. 420 (1933).
[3] Town of Malabar v. State, 195 So.2d 43 (4 Fla.App. 1967).
[4] Smith v. Town of Montverde, 38 So.2d 135 (Fla. 1948).