418 So.2d 669 (1982)
KEL-KAN INVESTMENT CORPORATION, et al., Plaintiffs-Appellees,
v.
VILLAGE OF GREENWOOD, et al., Defendants-Appellants.
No. 14908.
Court of Appeal of Louisiana, Second Circuit.
June 15, 1982.
Writ Granted October 8, 1982.
*671 Kennedy, Goodman & Donovan by Rellis P. Godfrey, Shreveport, for plaintiffs-appellees.
James E. Bookter, Bossier City, for defendants-appellants Village of Greenwood, et al.
Adams, Fant & Wyche by Michael H. Wainwright, Shreveport, for defendants-appellee Bossier Bank & Trust.
Before HALL, JASPER E. JONES and FRED W. JONES, JJ.
JASPER E. JONES, Judge.
This is an action to deannex approximately 32 acres from the Village of Greenwood. The plaintiffs are Kelly's Truck Terminal, Inc., the Marshan Kelly Hayes Trust, the Devon Albert Kelly, Jr. Trust and Mrs. Mary Barkley Kelly. The plaintiffs are the owners of the following described property, which lies within the corporate limits of the Village of Greenwood, Louisiana:

A. Tract No. 1
All that part of Lot 14 of the J. M. Dunn Estate Partition, as per plat recorded in C.B. 250, page 104, of the Conveyance Records of Caddo Parish, Louisiana, lying south of the south right of way line of the Texas and Pacific Railroad and north of the north line of Interstate Highway 20, located in the SE¼ of Section 24, Township 17 North, Range 16 West, Caddo Parish, Louisiana, LESS AND EXCEPT that certain tract containing 1.2101 acres conveyed to Kelly's Truck Terminal, Inc. by deed dated March 11, 1976, recorded in C.B. 1535, page 184, under Registry No. 678357 of the Records of Caddo Parish, Louisiana, and containing in said Tract No. 1 14.83 acres, more or less. OWNER: Kelly's Truck Terminal, Inc.

B. Tract No. 2
That certain tract or parcel of land containing 1.2101 acres, more or less, in the SE¼ of Section 24, Township 17 North, Range 16 West, Caddo Parish, Louisiana, and being more particularly described as follows:
Beginning at the 1/2" iron pin set in the north right of way of relocated U. S. Highway No. 80, said point of beginning being North 1° 15.3824' East 858.65 feet from the Southeast corner of Section 24, Township 17 North, Range 16 West, and in the East line of Lot No. 14 of the J. M. Dunn Partition as recorded in Book 255, page 368, Deed Records of Caddo Parish, Louisiana. Thence with the North right of way of relocated U. S. Highway No. 80, the following course:
South 82° 47.5985' West 141.73 feet
North 1° 15.3824' East 371.81 feet;
Thence North 79° 28' East 143.21 feet to a point in the East line of Lot No. 14 of the J. M. Dunn partition;
Thence South 1° 15.3824' West with the East line of Lot 14 of the J. M. Dunn Partition and East line of Section 24, Township 17 North, Range 16 West, 380.21 feet to the place of beginning, containing 1.2101 acres, more or less.
OWNER: Kelly's Truck Terminal, Inc.

C. Tract No. 3
That certain tract or parcel of land containing 16.229 acres, more or less, in the SW¼ of Section 19, Township 17 North, Range 15 West, Caddo Parish, Louisiana, and being more particularly described as follows:
Beginning at the ½" iron pin set in the north rights of way of relocated U. S. Highway No. 80, said point of beginning being North 1° 15.3824' East 858.65 feet from the Southwest corner of Section 19, Township 17 North, Range 15 West, and *672 in the East line of Lot No. 14 of the J. M. Dunn Partition as recorded in Book 255, page 368, Deed Records of Caddo Parish, Louisiana.
Thence with the north right of way of relocated U. S. Highway No. 80, the following six (6) courses:
(1) North 82°47.5986' East 28.41 feet;
(2) North 80°51.8985' East 490.20 feet;
(3) North 76°36.2387' East 205.63 feet;
(4) North 84°12.7114' East 197.85 feet;
(5) North 53°48.0243' East 565.23 feet;
(6) North 70°20.2387' East 158.76 feet to a point in the north right of way of relocated U. S. Highway No. 80, and the south right of way of Texas and Pacific Railroad;
Thence in a northwesterly direction along the arc of a curve to the left with a radius of 5654.58 feet (the chord of which bears North 77°47.333' West 1,530.63 feet) a distance of 1,534.72 feet to a ½" iron pin in the south right of way of Texas and Pacific Railroad and in the East line of Lot 14 of the J. M. Dunn Partition; thence South 1°15.3824' West with the East line of Lot 14 of the J. M. Dunn Partition and West line of Section 19, Township 17 North, Range 15 West, 860.94 feet to the place of beginning, containing 18.748 acres of land, more or less, LESS AND EXCEPT that certain tract or parcel of land containing 2.519 acres conveyed to Kelly's Truck Terminal, Inc. by deed dated March 11, 1976, recorded in C.B. 1525, page 184, bearing Registry No. 678357 of the Conveyance Records of Caddo Parish, Louisiana.
OWNER: Mrs. Devon Albert Kelly, Marshan Kelly Hayes Trust and Devon Albert Kelly, Jr. Trust
Hereinafter we will refer to the above described tracts as the "Property".
The defendants are the Village of Greenwood, its past and present Mayor and its past and present Aldermen. The defendants appeal a judgment deannexing the Property. We amend and affirm.
THE FACTS
The Village of Greenwood is located in Caddo Parish, Louisiana, west of the City of Shreveport. In the early 1970's it contained an area of approximately 350 acres and a population of about 700.
At that time many owners of property near the Village of Greenwood began to fear that growth of Shreveport would lead to their property being annexed by that city, or at least bring it under control of the Metropolitan Planning Commission. To avoid these possibilities many Greenwood area property owners, including the late D. A. Kelly, then president of Kelly's Truck Terminal, Inc., petitioned to have their lands, including the Property, annexed by the Village of Greenwood.
In 1972 the Village enacted an ordinance annexing approximately 2250 acres, including the Property. This state of affairs was satisfactory to all concerned until 1974 when the Village imposed the first substantial ad valorem tax in its history. The imposition of the tax caused a general hue and cry throughout the community and led to the election of a new Mayor and Aldermen.
The Property is the site of Kelly's Truck Stop. This is a large business operation located at the intersection of U. S. Hwy. 80 and Interstate 20. The operation employs approximately 200 people and includes a motel, restaurant, western store, chapel and camping area, as well as truck fueling, washing and repair facilities. The truck stop is located approximately one mile east of the preannexation boundaries of Greenwood.
Neither before nor after the imposition of the tax has the Kelly's operation received much in the way of municipal services. For a time Kelly's received water service from a federally financed community water system that did not belong to the Village, but it proved so inadequate that Kelly built its own water system, including wells and a storage tank.
The Kelly's operation also received some police protection from the Village. According *673 to plaintiffs' witnesses the police protection was inadequate and inefficient. Defendants' witnesses unsurprisingly told a contrary story. The record reflects that the truck stop hired its own security people and arrangements were made for the Caddo Parish Sheriff to respond to calls from the truck stop even after it was annexed. A reading of the trial judge's reasons for judgment makes it apparent the trial judge concluded that the Village provided the Property with very limited police protection and the evidence fully supports this finding of fact. Kelly's received no garbage services, street construction or street maintenance or lighting from the Village. The Property has received no sewer service, though there is some evidence that it may be available in the future.
Though it received little in municipal services, the operation paid considerable amounts in taxes to the Village. In 1974 and 1975 the taxes on the Property amounted to 13% and 15% respectively of the total ad valorem taxes collected by the Village.[1]
After the tax was imposed the appellees,[2] in accord with LSA-R.S. 33:176[3] and R.S. 33:172[4], petitioned the Village for deannexation of the Property.[5] There is no indication in the record that the notice of the filing of the petition was published by the Village as required by R.S. 33:172(B), nor that any hearing was requested or held as authorized by this statute. The Board of Aldermen declined to deannex the Property. Plaintiffs responded by bringing this action on March 23, 1976.
In 1977 the Village of Greenwood in a local option election was voted dry. This caused Kelly's operation to lose from $50,000 to $60,000 revenue per year in beer sales. Plaintiffs also contended at trial that the inability to sell beer adversely affected their motel operations. These factors increased plaintiffs' desire to have the Property deannexed.
*674 In 1979 plaintiffs filed their first supplemental and amending petition and began to press this proceeding. The defendant interposed a peremptory exception of prescription which was sustained by the district judge. Plaintiffs appealed and this court reversed and remanded in Kel-Kan Inv. Corp. v. Village of Greenwood, 393 So.2d 818 (La.App. 2d Cir. 1981).
On remand the case was tried on the merits and the district judge rendered judgment deannexing the Property. Defendants appeal and assert five assignments of error. They contend the trial judge erred in:
(1) considering factors relating to the reasonableness of an ordinance annexing or deannexing property when no ordinance is involved;
(2) considering factors relating to social detriment of the proposed deannexation;
(3) holding their refusal to deannex the Property arbitrary and capricious;
(4) finding that plaintiffs had discharged their burden of proof; and
(5) ordering deannexation of the Property.
The plaintiffs have neither appealed nor answered the appeal, but in their brief they complain of the district judge's failure to make the judgment retroactive to the filing of the original petition in this action and his failure to cast defendants for all costs of the proceedings. We will not consider those complaints as we may not modify the judgment in plaintiffs' favor due to their failure to appeal or answer the appeal. LSA-C.C.P. art. 2133;[6]Lake Lefluer v. Evangeline Parish Police Jury, 347 So.2d 875 (La.App. 3d Cir. 1977).
We now address the assignments of error.
ASSIGNMENTS # 1 and # 2
Through Assignment # 1 defendants contend that the district judge erred in considering factors relating to the reasonableness of an ordinance annexing or deannexing which converted this action into an attack on the 1972 annexation ordinance which is barred by the prescriptive period established by LSA-R.S. 33:175.
Through Assignment # 2 appellants attack the trial judge's consideration of the factors relating to social detriment from the proposed deannexation contending that such consideration caused him to lose sight of the ultimate question in this case. The ultimate issue in this case is whether or not the Board of Aldermen was arbitrary, capricious and unreasonable in refusing to deannex the Property.
Because Assignments # 1 and # 2 concern the factors to be considered in deannexation cases, we shall consider them together.
As there are no Louisiana decisions on deannexation, other than our earlier review of this case on the prescription issue, we have reviewed cases from other jurisdictions and find they consider many factors in reviewing actions to deannex or detach property from municipalities. The New Jersey courts consider the economic or social injury that would be caused by the proposed deannexation. Ryan v. Mayor & Council of Borough of Demarest, 64 N.J. 593, 319 A.2d 442 (1974). Utah and Florida courts consider the amount of municipal improvements and services provided to the area sought to be deannexed. In Re Layton City, 27 Utah 2d 241, 494 P.2d 948 (1972); Johnson v. Town of Suwannee River, *675 336 So.2d 122 (Fla.App. 1st Dist. 1976). Florida courts have also said that the test in a deannexation case is whether or not the involved land is by distance or other cause virtually and commensurately excluded from the benefits of the municipal organization. Town of Medley v. Seminole Rock Products, Inc., 138 So.2d 534 (Fla.App. 3d Dist. 1962). The South Dakota supreme court has said that the controlling reasons in cases such as this should be civic rather than reasons of revenue. Klosterman v. City of Elkton, 53 S.D. 324, 220 N.W. 910 (1928). Mississippi also views revenue considerations as inappropriate. Wheat v. Town of Poplarville, 149 Miss. 424, 115 So. 559 (1928). Nebraska courts consider several elements in disconnection cases including whether the land is agricultural, whether or not there is a community of interest between the land and the municipality, the municipal benefits, if any, received by the property and the effect on the compactness of the city limits that would result from the deletion. Dugan v. Village of Greeley, 206 Neb. 804, 295 N.W.2d 115 (1980).
Our courts consider factors such as a substantial increase in population, the need for additional area for constructing homes or other establishments, the need for areas to accommodate reasonably anticipated future growth and the extension of municipal services to substantial numbers of residents when determining the reasonableness of an annexation of property. Nix v. Village of Castor, 116 So.2d 99 (La.App. 2d Cir. 1959); Kansas City So. Ry. v. City of Shreveport, 354 So.2d 1362 (La.1978). These are also appropriate considerations in a deannexation proceeding. Pittsburgh-Des Moines Steel Co. v. Incorporated Town, 249 Ia. 1346, 91 N.W.2d 602 (Ia.1958).
The purposes of statutes permitting the deannexation of property is to grant relief to taxpayers in the disconnected area and to permit property not being used for municipal purposes to avoid the burdens of municipal taxation and regulation. In Re City of Palos Heights, 30 Ill.App.2d 336,174 N.E.2d 574 (1961).
Under our statutory scheme the power to extend or contract municipal limits is a legislative power vested in the municipal governing body subject to judicial review to determine whether that power has been exercised in an arbitrary, capricious or unreasonable way. Kel-Kan, supra. The following factors are particularly relevant to our review of the exercise or failure to exercise the power to contract municipal corporate limits:
(1) the social, cultural and economic nexus between the municipality and the Property in question;
(2) the social or economic detriment to the municipality, other than the loss of tax revenues, which would be caused by the deannexation;
(3) the extent of municipal improvements and services to the area in question;
(4) the distance and accessability of the area in question from the developed and developing areas of the community; and
(5) the presence of the factors outlined by this court in Nix v. Village of Castor, supra.
Among the factors which are irrelevant to the review of such cases are:
(1) the loss of tax revenue by the municipality which would result from the deannexation, In Re Peterson, 87 Utah 144, 48 P.2d 468 (1935); Wheat; Klosterman; supra, and
(2) whether or not the owner[s] of the Property in question originally requested the annexation. In Re Peterson, supra.
Neither of the above lists of factors is exclusive and the peculiar facts of each case may vary the weight which should be given to any individual factor.
The burden is on the party attacking the validity of the governing body's action, whether it was to exercise or refuse to exercise its power to contract the municipal limits to prove that action arbitrary and capricious. Hunter v. City of Shreveport, 216 So.2d 140 (La.App. 2d Cir. 1968), writ refused 253 La. 323, 217 So.2d 414 (1968).
*676 The complained of factors were properly considered by the trial judge and did not transform the proceeding into a challenge of the 1972 annexation ordinance. The trial judge's reasons for judgment make it clear that he was fully cognizant of the ultimate issue here.[7] These assignments of error are without merit.
ASSIGNMENTS # 3 and # 4
Through these assignments of error appellants contend that the district judge erred in finding that plaintiffs had carried their burden of proof and in holding the refusal to deannex arbitrary and capricious. Though these assignments are phrased differently they both actually address the finding that the refusal to deannex was arbitrary and capricious. Therefore, we shall consider them together.
Whether a refusal to deannex is arbitrary and capricious is a question of fact on which we may not disturb the trial judge's finding in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); cf. Nix, supra.
In his reasons the trial judge noted that the board refused to deannex for the reason that it feared such action would spawn a wave of additional requests for deannexation which, if also granted, would be detrimental to Greenwood. The trial judge's finding is strongly supported by the evidence.
Each request for deannexation must be decided on its own merits. The possibility that granting the initial request for deannexation may spur other requests is not a sufficient reason to withhold consent. West Point Island Civic Ass'n v. Township Committee, 54 N.J. 339, 255 A.2d 237 (1969). The Board's refusal on this basis was correctly found by the trial judge to have been unreasonable.
An examination of the factors previously mentioned shows that the Property and the operation conducted there have no social or cultural influence on the community. Further, there is surprisingly little economic connexity. The operation, though it has some local patronage, caters to and is patronized primarily by those involved in the interstate trucking industry.
At trial plaintiffs introduced evidence to show that there would be no detriment from the deannexation of the Property. Indeed it was indicated that the Village might benefit from increased employment because of expansion at the facility which would be made possible by increased business due to beer sales.
The evidence reflects, and the trial judge found, that there was little in the way of municipal improvements and services to the Property. The record also shows that the Property is over a mile from the developed areas of the community and is separated from most of it by I-20. Finally, the evidence reveals none of the factors discussed in the case of Nix, supra, as justification for retaining the Property in the municipality.
The record reflects that the Board's refusal to grant the deannexation was not based on its effects upon the Village but on the possibility of detriment due to granting future deannexation requests which it would have been in the Board's power to deny. On the record we cannot say that the trial judge was clearly wrong in finding the refusal to deannex arbitrary and capricious.
ASSIGNMENT # 5
Through this assignment appellants contend the district judge erred in ordering the deannexation of the Property. This assignment is purely conclusory and appellants *677 make no argument in support of it. However, we take this opportunity to examine the form of the judgment.
The trial judge rendered judgment "... deannexing from the Village of Greenwood, Louisiana, the Property ..."
As previously noted, the power to extend or contract municipal corporate limits is a legislative function of the governing body of the municipality. However, the exercise of this legislative function of denial of the petition to deannex is subject to judicial review for the purpose of determining if it was an unreasonable action. Where the action denying the deannexation is found to be arbitrary and unreasonable the court may order the municipality to enact the ordinance of deannexation. Kel-Kan; West Point; supra.
Here there are preliminary requirements contained in the statutes authorizing deannexation that must be complied with before the Village can enact the ordinance to deannex. Before the Village can be required to enact an ordinance of deannexation, the provisions of LSA-R.S. 33:172(B) must be complied with.
The statute requires publication of notice of the filing of the petition and provides that anyone desiring to be heard on the ordinance may apply for a hearing which must be held before the municipality adopts the ordinance. Should any person timely apply for a hearing we direct the municipal authorities to conduct such hearing and consider the evidence therein adduced in light of the views expressed hereinabove.
Should there be no timely application for a hearing on the plaintiffs' deannexation petition, the defendants shall enact the deannexation ordinance.
The judgment appealed should be modified to require the Village to publish a notice of the petition and in the event no hearing is requested to enact an ordinance deannexing the Property in accord with LSA-R.S. 33:172 and 33:176. The judgment should be further modified to require the hearing, in the event it is requested, and to instruct that evidence adduced at that hearing be considered in making the deannexation determination.
For the foregoing reasons the second paragraph of the judgment is recast as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment for petitioners, Kelly's Truck Terminal, Inc., The Marshan Kelly Hayes Trust, the Devon Albert Kelly, Jr. Trust and Mrs. Mary Barkley Kelly and against defendants, The Village of Greenwood, Louisiana, Jasper E. Tilley, William Peters, J. D. Roan, James Gobert, Leroy Hillman, Albert Reed Bonds, Thomas F. Philyaw, and Raymond Hollis Bounds, ordering defendants to publish notice of the petition for deannexation as required by law, and if no hearing is then requested to enact and ordinance contracting the municipal corporate limits of and deannexing from the Village of Greenwood the Property in the name of Petitioners described as follows:

A. Tract No. 1
All that part of Lot 14 of the J. M. Dunn Estate Partition, as per plat recorded in C.B. 250, page 104, of the Conveyance Records of Caddo Parish, Louisiana, lying south of the south right of way line of the Texas and Pacific Railroad and north of the north line of Interstate Highway 20, located in the SE¼ of Section 24, Township 17 North, Range 16 West, Caddo Parish, Louisiana, LESS AND EXCEPT that certain tract containing 1.2101 acres conveyed to Kelly's Truck Terminal, Inc. by deed dated March 11, 1976, recorded in C.B. 1535, page 184, under Registry No. 678357 of the Records of Caddo Parish, Louisiana, and containing in said Tract No. 1 14.83 acres, more or less. OWNER: Kelly's Truck Terminal, Inc.

B. Tract No. 2
That certain tract or parcel of land containing 1.2101 acres, more or less, in the SE¼ of Section 24, Township 17 North, Range 16 West, Caddo Parish, Louisiana, and being more particularly described as follows:

*678 Beginning at the ½" iron pin set in the north right of way of relocated U. S. Highway No. 80, said point of beginning being North 1° 15.3824' East 858.65 feet from the Southeast corner of Section 24, Township 17 North, Range 16 West, and in the East line of Lot No. 14 of the J. M. Dunn Partition as recorded in Book 255, page 368, Deed Records of Caddo Parish, Louisiana. Thence with the North right of way of relocated U. S. Highway No. 80, the following course:
South 82° 47.5985' West 141.73 feet;
North 1° 15.3824' East 371.81 feet;
Thence North 79° 28' East 143.21 feet to a point in the East line of Lot No. 14 of the J. M. Dunn partition;
Thence South 1° 15.3824' West with the East line of Lot 14 of the J. M. Dunn Partition and East line of Section 24, Township 17 North, Range 16 West, 380.21 feet to the place of beginning, containing 1.2101 acres, more or less.
OWNER: Kelly's Truck Terminal, Inc.

C. Tract No. 3
That certain tract or parcel of land containing 16.229 acres, more or less, in the SW¼ of Section 19, Township 17 North, Range 15 West, Caddo Parish, Louisiana, and being more particularly described as follows:
Beginning at the ½" iron pin set in the north rights of way of relocated U. S. Highway No. 80, said point of beginning being North 1° 15.3824' East 858.65 feet from the Southwest corner of Section 19, Township 17 North, Range 15 West, and in the East line of Lot No. 14 of the J. M. Dunn Partition as recorded in Book 255, page 368, Deed Records of Caddo Parish, Louisiana.
Thence with the north right of way of relocated U. S. Highway No. 80, the following six (6) courses:
(1) North 82° 47.5986' East 28.41 feet;
(2) North 80° 51.8985' East 490.20 feet;
(3) North 76° 36.2387' East 205.63 feet;
(4) North 84° 12.7114' East 197.85 feet;
(5) North 53° 48.0243' East 565.23 feet;
(6) North 70° 20.2387' East 158.76 feet to a point in the north right of way of relocated U. S. Highway No. 80, and the south right of way of Texas and Pacific Railroad;
Thence in a northerly direction along the arc of a curve to the left with a radius of 5654.58 feet (the chord of which bears North 77° 47.333' West 1,530.63 feet) a distance of 1,534.72 feet to a ½" iron pin in the south right of way of Texas and Pacific Railroad and in the East line of Lot 14 of the J. M. Dunn Partition; thence South 1° 15.3824' West with the East line of Lot 14 of the J. M. Dunn Partition and West line of Section 19, Township 17 North, Range 15 West, 860.94 feet to the place of beginning, containing 18.748 acres of land, more or less, LESS AND EXCEPT that certain tract or parcel of land containing 2.519 acres conveyed to Kelly's Truck Terminal, Inc. by deed dated March 11, 1976, recorded in C.B. 1525, page 184, bearing Registry No. 678357 of the Conveyance Records of Caddo Parish, Louisiana.
OWNER: Mrs. Devon Albert Kelly, Marshan Kelly Hayes Trust and Devon Albert Kelly, Jr. Trust.
In the event a hearing is required the Board of Aldermen of the Village of Greenwood is ordered to consider the evidence there adduced in light of the views herein expressed and make a reasonable determination of whether or not to grant the petition to deannex and if they find the petition to deannex reasonable the Board of Alderman is ordered to enact an ordinance deannexing the above described property from the Village of Greenwood.
As AMENDED the judgment is AFFIRMED. The costs of this appeal are taxed against appellants.
NOTES
[1] The figures for the succeeding years were:

 1976-19%
 1977-18%
 1978-15%

[2] The petition was also signed by other landowners who were originally plaintiffs but who have withdrawn from the case.
[3] R.S. 33:176To contract the boundaries of a municipality the same procedure shall be followed as outlined above and the same notice must be published and the same right of appeal to the courts is granted as is provided for in the case of the enlargement of the boundaries.
[4] R.S. 33:172A. No ordinance enlarging the boundaries of a municipality shall be valid unless prior to the adoption thereof a petition has been presented to the governing body of a municipality containing the written assent of a majority of the registered voters and a majority in number of the resident property owners as well as twenty-five percent in value of the property of the resident property owners within the area proposed to be included in the corporate limits according to the certificate of the parish assessor. If there are no registered voters residing in the area proposed for annexation, then the requirement for a majority of the registered voters on the petition shall not apply. The valuation of the property within the area proposed to be annexed shall be certified to by the assessor according to the assessment of each of the owners signing the petition. Where there has been a change of ownership since the last assessment of the property, the assessor shall certify the valuation of the present owner in accordance with the last assessment appearing on the rolls against any previous owner. In any case where the property of the present owner has not specifically been assessed the assessor shall estimate the assessed value of the property for the current year and certify the same as the value of the property.

At the request of any municipality contemplating the annexation of any tract of land, the registrar of voters shall provide a certified list of the registered voters residing in the area proposed to be annexed.
Provided, however, that the city of New Orleans cannot incorporate any area of Jefferson, Plaquemines or St. Bernard Parishes.
B. Notice by publication shall be given once of the filing of the petition in some newspaper published or having general circulation in the municipality. No ordinance enlarging the boundaries of the municipality shall be adopted until ten days after the publication of the notice. Anyone desiring to be heard with reference to the proposed ordinance shall notify the clerk or secretary of the municipality in writing and the governing authorities, before adopting any ordinance, shall grant such hearing.
[5] The petition also requested the deannexation of property owned by signers who are no longer parties to this action and whose property is no longer involved.
[6] C.C.P. 2133An appellee shall not be obliged to answer the appeal unless he desired to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.
[7] This is illustrated by the following excerpt from the district judge's reasons:

"... We have already said that we felt the circumstance was not fair to Kelly's Truck Stop, but of course the issue is whether or not it is legal. We cannot substitute our judgment for the judgment of the Town of Greenwood. That is, the test is not whether or not we would do it differently if we were in the place of the Town of Greenwood. But the question is whether the Town of Greenwood has overstepped their authority or improperly failed to exercise their authority. The burden of proof is on the plaintiff." [Rec. 417].