428 So.2d 401 (1983)
KEL-KAN INVESTMENT CORP., et al.
v.
VILLAGE OF GREENWOOD, et al.
No. 82-C-1797.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied March 25, 1983.
James E. Bookter, Bossier City, for petitioners-applicants.
Frank S. Kennedy, Rellis P. Godfrey, Kennedy, Goodman & Donovan, Michael H. Wainwright, Adams, Fant & Wyche, Shreveport, for respondents.
CALOGERO, Justice.
This matter involves an attempt by property owners to deannex their property from a Louisiana municipality by court judgment after the governing authority of the municipality did not act favorably upon the property *402 owners petition for deannexation. Essentially both lower courts gave the plaintiffs relief.
We find that Louisiana's statutory scheme for the contraction of the corporate limits of a municipality does not provide for deannexation by court judgment. Nor does it provide for the court's ordering the governing authority to act on deannexation petitions. Nor do we find any other reason for court intervention in this deannexation dispute outside of the provisions of the legislative scheme. We therefore reverse the lower court judgment.
The description of the tracts involved and the events preceding the district court judgment ordering the deannexation of the land involved are set forth at length in the Court of Appeal opinion. Kel-Kan Investment Corp. v. Village of Greenwood, 418 So.2d 669 (La.App. 2d Cir.1982). We include here only those events which are most pertinent to the resolution of the narrow issue before us.
The land in question comprising Kelly's Truck Terminal (and including a motel, restaurant, store, chapel, camping area and truck service center) was annexed to the Village of Greenwood by petition and ordinance in 1972. In 1974 the Village enacted for the first time in its history a general levy of ad valorem taxes on the assessed properties within the corporate limits. In 1975, plaintiffs petitioned the village council (the Mayor and the Board of Aldermen) for deannexation. No action was taken on the petition. On March 23, 1976, a petition was filed in district court seeking to have the municipality's action in withholding consent concerning deannexation declared arbitrary and unreasonable. Petitioners sought judgment ordering the municipal boundaries contracted and deannexing the property from the Village of Greenwood. Answers to this petition were filed by the defendants, but nothing more happened until 1978.
In that year, a majority of the electors in the village approved an ordinance to prohibit the sale of alcoholic beverages within the corporate limits of Greenwood. The validity of the election was challenged and ultimately upheld by this Court. Devon A. Kelly, Jr. v. Village of Greenwood, 363 So.2d 887 (La.1978). The next year attorneys for the plaintiffs filed an amended supplemental petition because Devon A. Kelly, Sr. had died and the Mayor and Board of Aldermen for Greenwood had changed since 1976 when the suit seeking deannexation was originally filed. In response, the defendants filed an exception of prescription alleging that the plaintiffs were actually attacking the reasonableness of the annexation ordinance passed in 1972 and that the statutory thirty day period for challenging the ordinance under La.R.S., 33:174 had elapsed. The district court sustained the exception; the Court of Appeal reversed and remanded the case for trial. Kel-Kan Investment Corp. v. Village of Greenwood, 393 So.2d 818 (La.App. 2d Cir. 1978) (hereinafter cited as Kel-Kan I).
At the trial's conclusion, the district court ordered the deannexation of the described property of the plaintiffs. The defendant appealed and the Court of Appeal amended the judgment to order the municipality to enact an ordinance of deannexation, but after following prescribed statutory procedures, and otherwise affirmed the district court. Kel-Kan Investment Corp. v. Village of Greenwood, 418 So.2d 669 (La.App. 2d Cir.1982) (hereinafter cited as Kel-Kan II).
We granted the defendant's writ application. Kel-Kan Investment Corp. v. Village of Greenwood, 420 So.2d 977 (La.1982).
The statutory authority whereby a municipality's boundaries may be enlarged or contracted is La.R.S. 33:171 which reads as follows:
R.S. 33:171. Ordinance to enlarge or contract corporate limits.
The limits and boundaries of incorporated municipalities shall remain as established on July 31, 1946, but may be enlarged or contracted by ordinance of the governing body as hereinafter provided, the City of New Orleans excepted. *403 The legislative scheme then is that the July 31, 1946, boundaries of incorporated municipalities shall remain fixed unless an ordinance of the governing body enlarges or contracts those boundaries.
Following La.R.S. 33:171 are statutes which elaborate upon the requirements for a valid enlargement of municipal boundaries (annexation) by the governing body. By virtue of La.R.S. 33:176 these procedures apply equally to the contraction of municipal boundaries (deannexation).
La.R.S. 33:172(A) and (B) set forth the procedures required for enactment of an ordinance enlarging municipal boundaries.[1] There need to have been before passage (1) a petition presented "containing the written assent of a majority of the registered voters and a majority in number of the resident property owners as well as 25% in value of the property of the resident property owners within the area proposed to be included..." and (2) a certified valuation of the property within the area by the assessor. La.R.S. 33:172(A). A waiting period of ten days is required between the public notice of the petition's filing and the adoption of the ordinance to allow for a hearing on the matter upon written request to the governing authorities. La.R.S. 33:172(B).
After the ordinance is adopted by the governing authorities, La.R.S. 33:173 provides for a thirty day waiting period from the date of its publication before the ordinance becomes operative. La.R.S. 33:174 allows any interested citizen during that thirty day period to contest the reasonableness of the ordinance by filing suit in the district court having jurisdiction over the municipality. If the proposed extension is found to be "reasonable," the ordinance becomes effective ten days after the court judgment unless such judgment is appealed. If the proposed extension is found to be "unreasonable," the ordinance is vacated, the proposed extension denied with a similar right of appeal, and a ban on enacting a similar ordinance is in effect for a year.
La.R.S. 33:175 contains a prescriptive period of thirty days after which, if no suit is filed or if no appeal is taken within the legal delays from the district court's sustaining the ordinance, the ordinance becomes operative and cannot thereafter be challenged for any reason or cause whatsoever.
La.R.S. 33:176, referred to earlier, provides that:
[t]o contract the boundaries of a municipality the same procedure shall be followed as outlined above and the same notice must be published and the same right of appeal to the courts is granted as is provided for in the case of the enlargement of the boundaries.
La.R.S. 33:178 requires that the ordinance with complete and accurate description of the territory involved be filed with the clerk of the district court of the parish in which the municipality is located. La.R.S. 33:179 defines the rights of residents and owners of included territory and La.R.S. 33:180 details the means by which a municipality may annex by ordinance territory owned by a public body.
Conspicuously absent from the statutory scheme is a provision for judicial review when no ordinance has been passed either enlarging or contracting the boundaries of a municipality. Nor is there provision for *404 court-ordered enlargement or contraction of municipal boundaries or for court-ordered municipal action to enlarge or contract its boundaries without there having first been the passage of an ordinance.
The plaintiffs argued successfully in the lower courts that judicial review is available because the court can generally review the actions of a municipality to decide whether such actions are arbitrary, capricious or unreasonable.
Admittedly, very early on, this Court upheld as constitutional statutes allowing appeal to the courts to determine the reasonableness of ordinances which extend the boundaries of a municipality. See New Orleans & N.W.R. Co. v. Town of Vidalia, 117 La. 561, 42 So. 139 (1906). Likewise the court's review of the reasonableness of ordinances to contract the boundaries of municipalities is settled. Edwards v. Town of Ponchatoula, 213 La. 116, 34 So.2d 394 (1948).
What has not yet been decided by this Court is whether there can be judicial review of a municipal body's decision not to enact an ordinance,[2] without express statutory authority for such review, and whether the court may either order the municipal governing authority to enact an ordinance of deannexation (or annexation) or order the deannexation (or annexation) itself.
The Court of Appeal in Kel-Kan I, supra, in addressing the question of whether plaintiff's petition stated a cause of action, acknowledged that the question was not an "attack upon the reasonableness of an ordinance contracting municipal limits, but with the alleged arbitrariness of the municipal governing body in refusing to contract those limits." (Emphasis in original). Likewise the Kel-Kan I court acknowledged that there were no Louisiana cases on that precise question. 393 So.2d at 821. As a result, the court relied upon a case of the New Jersey Supreme Court to decide that there existed outside the statutory provision of La.R.S. 33:175 a right of appeal to the courts from the denial of a petition for deannexation. West Point Island Civic Assoc. v. Township Committee, 54 N.J. 339, 255 A.2d 237 (1969). For the reasons which follow, we find inapplicable the New Jersey case on which the appellate court relied. As a result, we find no authority in the Louisiana statutory scheme, nor in the jurisprudence of this state, for the court to order deannexation of Kelly's Truck Terminal from the corporate limits of the Village of Greenwood, or to order the municipality to pass an ordinance of deannexation.
Courts may review ordinances which have been passed, for compliance with legislatively ordained standards of reasonableness. Review of a councilmanic decision to desist from passing an ordinance, however, is a different matter, involving court scrutiny of the motives of a law-making body, and *405 potential compromise of the constitutionally ordained separation of powers. La.Const. art. 2 § 2.
When an ordinance is challenged which is enacted by virtue of the discretionary power of the municipal legislative body, the judiciary will not inquire into the motives of the legislators in determining the reasonableness of the provision. 5 McQuillin, Municipal Corporations § 16.90 (3rd ed. 1981). Our courts usually do not review the policy or wisdom of legislation, and confine our considerations to determining the applicability, legality, or constitutionality of laws. La.Const. art. 2 § 2; Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969); Reynolds v. Louisiana Board of Alcoholic Bev. Con., 248 La. 639, 181 So.2d 377 (1966); Turner v. Consolidated Underwriters, 248 La. 37, 176 So.2d 420 (1965); Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963).
It has been suggested, however, with some conviction, that the problems of separation of powers does not figure so greatly in questions of a state court's review of municipal legislative action. Note, 78 Harvard Law Review 1596 at 1603. Municipalities are creatures of the Legislature and possess those powers granted to them by the state. La.Const. art. 6 § 2 and Bradford v. City of Shreveport, 305 So.2d 487 (La.1974).[3] Therefore city legislators (in this case, the municipality's aldermen) are responsible not only to the city residents but also to the state, for as agents of the state, they have been commissioned by the legislature to take a prominent role in matters relating to annexation and deannexation. One reason given to allow an overview by state courts of municipal action is because non-residents may be affected by such ordinances and for them, the political processes will not work properly. Note, supra at 1604. Nonetheless because the separation of powers problem is ever present, though perhaps to a lesser degree with municipalities, there should be some qualification to instances where judicial review and affirmative intervention by the courts into municipal affairs is warranted. "Certainly, if courts possess the power to interfere and restrict a body executing its legislative authority within its prescribed compass, that power ... should be exercised only under extraordinary circumstances and when public policy imperatively requires it." McQuillin, supra § 16.91.
Apparently it was just such extraordinary circumstance and public policy which required the New Jersey court in West Point, supra to have the township deannex the disputed territory. There are no comparable circumstances or imperative public policy to warrant the intervention in the case before us.
The West Point case involved a dual process whereby neighboring municipalities might annex and deannex respectively a particular contiguous territory. The statute required action on the part of both municipalities. One would annex the affected territory simultaneously with the adjoining township's deannexation. The linchpin to an effective transfer was the willingness of both townships to pass the required ordinances. Therefore the New Jersey Supreme Court found that the municipal decisions involved would affect the statewide legislative scheme for deannexation of land from one municipality and for its annexation to another. Were judicial review not available, "the municipality in which the land is located by mere whim could thwart the purpose of the annexation statute." West Point, supra 255 A.2d at 241.
In this case, we have an entirely different situation presented. The scheme involves action on the part of only one *406 municipality.[5] There are no countervailing interests of an adjoining municipality.
Nor is there any overriding public policy considerations. There is no statewide scheme which will be thwarted by the municipality's inaction. Louisiana's statutory scheme for the enlarging or contracting of municipal boundaries requires affirmative action on the part of the municipality, either by petition and election (La.R.S. 33:151 through 160 and portion of La.R.S., 33:172) or by petition and ordinance (La.R.S. 33:171 through 180). Absent action by the governing authority of the municipality, the limits and boundaries shall remain as established on July 31, 1946. La.R.S., 33:171.
Nor can we find any non-statutory basis for the court's ordering deannexation. There is no constitutional right to annexation or deannexation. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949). See also: Annot. 22 A.L.R. Fed. 272 (1975); Annot. 117 A.L.R. 267 (1938).
By virtue of the annexation of the disputed territory in 1972, the owners are now residents of the village of Greenwood and presumably are able to express their approval or disapproval of the inaction of the incumbent governing authorities at the ballot box.

Decree
For the foregoing reasons, we reverse the judgments of the lower courts.
REVERSED.

* * *
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
When a statute provides a procedure whereby certain citizens can petition a municipality for annexation or deannexation and the municipality acts on the petition by adopting a motion denying the petition, the statutory right of judicial review of the ordinance (which would have been enacted if the petition had been approved) is impliedly applicable to the denial of the petition. Adoption of the motion denying the petition should be viewed as the equivalent of an ordinance-declining deannexation. It is the official action of the municipality, and not the ordinance which evidences that action, which is subject to judicial review.[1]
I would affirm the judgments of the courts below.
NOTES
[1] La.R.S. 33:172(C) and (D) provide methods for annexation which are alternatives to ordinances following petition. These provisions allow enlargement by a municipality of contiguous areas following an election and are not pertinent to the case at hand.

La.R.S. 33:172(C) provides that a municipality may annex contiguous areas by election (when 90% of the boundary of the annexed area is common with that of the existing municipality) if a majority of the registered voters in the proposed area approve in an election called for that purpose.
La.R.S. 33:172(D) also allows a municipality to annex contiguous areas by election and without a petition. A majority of the registered voters must vote favorably. Additionally, under 33:172(D) the municipality may call an election when so requested by petition of 25% of the resident property owners of the area and by owners of at least 25% of value of resident property in the area.
La.R.S. 33:154 through 161 set forth fully the procedural requirements for an annexation by election.
[2] All prior cases on the question of the enlargement or contraction of municipal boundaries have involved a challenge to a municipal ordinance. Kansas City Southern Ry. Co. v. City of Shreveport, 354 So.2d 1362 (La.1978), cert. denied, 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978) involved a challenge to the adoption of an annexation ordinance by the City of Shreveport to include a nine square mile residential and industrial area. Kansas City Southern Ry. Co. challenged the sufficiency of signatures on the petition, the sufficiency of petitions of registered voters, the certification of the resident property owners and the reasonableness of the ordinance. The ordinance was upheld by this Court. See also: Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62 (1950); Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235 (1949); Edwards v. Town of Ponchatoula, 213 La. 116, 34 So.2d 394 (1948); Pettigrew v. City of Houma, 169 La. 1191, 126 So. 919 (1930); Harvey Canal Land & Improvement Co. v. Gelbke, 166 La. 896, 118 So. 75 (1928) (wherein this Court found the ordinance to be unreasonable); Lawrence v. Mansfield, 129 La. 672, 56 So. 633 (1912); New Orleans & N.W.R. Co. v. Town of Vidalia, 117 La. 561, 42 So. 139 (1906); Garland v. Town of Ville Platte, 184 So.2d 560 (La.App. 3rd Cir.1966); Grice v. Mayor and Council of Morgan City, 164 So.2d 370 (La. App. 1st Cir.1964); Dupre v. Mayor and Bd. of Aldermen of City of Houma, 126 So.2d 637 (La.App. 1st Cir.1961); Nix v. Village of Castor, 116 So.2d 99 (La.App. 2d Cir.1960); Hilder v. Town of Lake Providence, 91 So.2d 387 (La.App. 2d Cir.1957); Cheshire v. City of Minden, 83 So.2d 526 (La.App. 2d Cir.1956); Breland v. City of Bogalousa, 51 So.2d 342 (La. App. 1st Cir.1951).
[3] There are constitutional provisions for home rule charters and plans of government. La. Const. art. 6 § 4 et seq. It appears, however, that Greenwood does not have a home rule charter. It was incorporated originally by Act 69, Acts of 1876 § 9. Then, under the provisions of La.R.S. 33:51-55, the Village of Greenwood on September 22, 1970, changed its form of government to a Lawrason Act municipality reincorporating the original 350 acres.
[5] While Louisiana does not have a statute comparable to that of New Jersey which provides for the simultaneous annexation and deannexation of property of one municipality adjacent to a contiguous municipality, there is a Louisiana statute which makes provision for the merger or consolidation of "any two contiguous municipalities, lying in the same parish." La.R.S. 33:191 through 209.
[1] Of course, judicial review of the council's decision to deny the statutory petition does not involve a substitution of the judgment of the court for the judgment of the governing body, but rather involves a review for arbitrariness, as does the judicial review of an action which approves the petition and enacts an ordinance of annexation or deannexation.